---

INCORPORATED TOWN OF TAHLEQUAH VS GUINN ET AL.

Opinion delivered October 19, 1904.

1. *Municipal Corporations—Contract for Water Supply—Exclusive Use of Streets.*

Under Sec. 755 Mansf. Dig. (525 Ind. Ter. Stat.) municipal corporations in the Indian Territory have power to contract with any person or corporation for the construction of a system of water-works, to contract with them for furnishing water to said town, and to grant them the exclusive privilege of using the streets and alleys of said town for such purposes.

2. *Muncipal Corporations—Exclusive Contracts—Taxpayers Cannot Maintain Suit to Question, unless Illegal.*

An ordinance of an incorporated town in the Indian Territory granting an exclusive privilege to a water company, by ordinance, to use the streets and alleys and furnish water to said town, is within the power of the corporation, not ultra vires, and, therefore cannot be questioned by its citizens as taxpayers, in an action to enjoin the carrying out of the contract.

3. *Muncipal Corporations—Ordinances not Restrained by Injunction.*

In the absence of a showing of fraud or gross wrong, courts will not inquire into the reasonableness of ordinances or contracts of a muncipal corporation, especially where such ordinance is one expressly authorized by law, and in such case a court of equity will not interfere by injunction.

33

4. *Statutes—Repeal of.*

> The Act of Cong. May 19, 1902 (32 Stat. 200) authorizing cities and towns in the Indian Territory of a certain population, to issue bonds and borrow money for the construction of a system of water-works, is not in conflict with Chap. 29, Mansf. Dig. empowering muncipal corporations to grant exclusive privileges and contract for a water supply with others, nor does it repeal such chapter.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by James L. Guinn and others against the Incorporated Town of Tahlequah and others. Judgment for plaintiffs. Defendants appeal. Reversed.

On the 25th day of November, 1903, the plaintiffs below (appellees here) filed their complaint in equity against the defendants below (appellants here), and state that they are residents, qualified electors, and taxpayers of the incorporated town of Tahlequah, Ind. Ter., and file their complaint in behalf of themselves and others similarly situated. For their first cause of action they allege: "That on the 27th day of October, 1903, the council of said town, at a regular meeting, purported to pass, enact, and adopt a certain ordinance designated as 'No. 64,' and entitled 'To provide for supplying with water the streets, lanes, alleys and public places in the incorporated town of Tahlequah, Indian Territory, and for the contracting with the Crystal Springs Water Company, of Tahlequah, Indian Territory, a corporation organized under the laws of the United States, in force in the Indian Territory, its successors and assigns, for the purpose of supplying with water such streets, lanes, alleys and public places,' a copy of which alleged ordinance is filed here-

with, made a part hereof, marked 'Exhibit A.'" That section 1 provides as follows: "The incorporated town of Tahlequah, Indian Territory, hereby contracts with the Crystal Springs Water Company, of Tahlequah, Indian Territory, a corporation organized under the laws of the United States in force in the Indian Territory, its successors and assigns, for the supplying with water the streets, lanes, alleys and public places in said town upon the terms and conditions contained in the following sections of this ordinance." That section 2 provides that this contract shall remain and be in force for the term of 60 years from and after the date of its passage, and that the said Crystal Springs Water Company "shall have the exclusive right to maintain and operate water works, for supplying the said streets, lanes, alleys and public places with water and for the extinguishment of fires in said town, and for domestic, manufacturing and industrial uses in said town," etc. That section 7 provides that the town agrees to rent from the water company 60 hydrants at a rental of $50 each per annum during the term of the contract. That section 10 provides that the town shall levy a water tax each year to pay the hydrant rental. That section 11 provides that when said waterworks are completed a test thereof shall be made for an assurance of the capacity herein set forth. Plaintiffs further aver that the adoption by the council of said town of said provisions of said ordinance is illegal and void as against public policy; that the same will greatly increase the rate of taxation, to their irreparable damage.

For their second cause of action they allege: That section 3 provides that said water company "is hereby authorized to establish, construct, maintain and operate water works in or adjacent to said town." That section 14 provides that said contract shall be in force after publication, as provided by law, and that said water company shall accept the same in writing within 20 days after ratification. That section 16 provides that

said water company shall deposit within the limits of said town materials to the value of $5,000, which shall be held by said town as security for the completion of the contract. Plaintiffs further aver that the adoption of said ordinance by said council of said town granting to said water company or its assigns said contract is an ultra vires act, and illegal and void, and against public policy, and that they have no adequate remedy at law.

For their third cause of action they allege: That section 4 provides that said waterworks shall be constructed upon the plans and specifications furnished by C. A. Rees, which are made a part of this contract, and are set out in said section 4; but plaintiffs allege that they are not a part of the ordinance, nor a part of the contract.

For their fourth cause of action they allege: That section 13 provides that any person or persons engaged in the business of plumbing or fitting premises with service water pipes shall give bond to said water company, its successors or assigns, in the sum of $500, with sureties to be approved by the mayor of said town. That said water company, under said section 13, and its right to do plumbing itself, is given a monopoly, which is against public policy, by reason of which plaintiffs will be subjected to extortionate demands, to their damage.

For their fifth cause of action they allege: That said town has taken steps to establish public schools, and have contracted for the lighting of certain streets by electricity; that said two projects will exhaust all funds to be raised by reasonable taxation; that the present water supply is abundant; and that a tax of $3,000 per annum under this contract for 60 years is unreasonable, oppressive, unjust, and against the common rights of plaintiffs, and to their damage,

For their sixth cause of action they allege: That the taxable wealth of the town is limited; that the conditions in said town are wholly different as to property and its values from what they are in Arkansas, and that the laws of Arkansas are not applicable, and will not be until conditions are identical with those in Arkansas; and that granting exclusive privileges to said water company in pretended · compliance with the laws of Arkansas is an irreparable loss and damage to them.

For their seventh cause of action they allege: That an act of Congress of the United States, approved May 19, 1902 (chapter 816, 32 Stat. 200), and entitled "An act for the protection of towns and cities in the Indian Territory, and for other purposes," provides in part as follows, to wit: "That any incorporated town or city in the Indian Territory having a population of two thousand or more is hereby authorized to issue bonds and borrow money thereon, to be used for the construction of sewers and water works, and for building school houses," etc. That said act of Congress repeals or replaces any part or parts of the laws of Arkansas extended over the Indian Territory relating to or controlling the purposes embraced in said act of Congress. That the pretended enactment, passage, and adoption by the town council of the town of Tahlequah, Ind. Ter., of Ordinance No. 64, purporting to authorize the Crystal Springs Water Company, its successors and assigns, to supply the town of Tahlequah with water for domestic, public, and manufacturing purposes by the construction and operation of a system of waterworks, was contrary to the form, intent, and purpose of the act of Congress of the United States hereinbefore referred to, and is ultra vires, illegal, and void. That by reason of the action of said council of said town they have been greatly damaged.

For their eighth cause of action they allege: That the said town by said contract purported to grant to said water

company the exclusive use of two public springs of said town That by the act of the Cherokee Council adopted October 4, 1839, and a subsequent act approved October 28, 1843, and the patent between the United States and the Cherokee Nation, and the treaties of 1833, 1835, and 1846 (7 Stat. 415, 479; 9 Stat. 871), the title to the lands in the Cherokee Nation was secured to the whole people for their common use and benefit; that the act establishing the Female Seminary site set that ground and the springs thereon apart as national property; and that the force and effect of these said several acts and laws, based on the treaties and patent from the United States is to deprive the town council of the town of Tahlequah of the right and authority of power to grant a right of way over any of the streets, lanes, and alleys so set apart, or the use of any springs so dedicated to public use. That the adoption of said ordinance by the council of said town is contrary to public policy, the form, intent, and meaning of the acts, laws, and treaties hereinbefore referred to, contravenes the common rights of the people, and is therefore ultra vires, illegal, and void.

They allege that by reason of said pretended enactment they have been damaged, wherefore they pray that a temporary injunction be granted against said water company from taking any steps to construct said waterworks, to restrain said town from levying any tax for the construction of the same, and to restrain the mayor, recorder, and town council of said town from adopting any ordinance in violation of the form, meaning, and intent of the act of Congress approved May 19, 1902, c. 816, 32 Stat. 200, and to restrain said town from adopting any ordinance to authorize the use of the streets, lanes, and alleys of the town of Tahlequah and the town public springs by any person or persons or corporation for the construction and operation of a system of waterworks and pipe lines in violation of the rights of plaintiffs and to the streets, lanes, and alleys as secured by the

said several acts, laws, and treaties of the Cherokee Nation here-inbefore referred to, and that upon the final hearing said injunction be made perpetual.

On March 18, 1904, the defendants filed their demurrer to said complaint, as follows: "Come now the defendants, and demur to the complaint of plaintiffs herein, for the reasons: That the plaintiffs have not legal capacity to sue. Defendants further demur to the first, second, third, fourth, fifth, sixth, seventh, and eighth paragraphs, separately, of said complaint, and for ground therefor say that neither of them states facts sufficient to constitute an equitable cause of action. Wm. T. Hutchings, W. W. Hastings, Attorneys for Defendants."

On April 1, 1904, this cause came on for hearing, and the court, having heard the matter therein and the arguments of counsel, said cause being submitted to the court on the plaintiffs' complaint and the demurrer therein of the defendants, and the court, finding the complaint sufficient to entitle the plaintiffs to the relief prayed for, did overrule said demurrer of the defendants. The defendants then and there duly excepted, and asked for their exceptance to be noted of record, which was accordingly done. Thereupon defendants, through their attorneys, refused in open court to plead further in this cause, and entered an appearance, and waived summons and service and all process in this cause whatever, and the final hearing of this cause. Whereupon the court granted the injunction prayed for in plaintiffs' complaint, and made the same perpetual. "Wherefore it is considered, ordered, and decreed by the court that the injunction in this cause be, and the same is, made perpetual, and that a writ of injunction issue against the defendants, and each of them, restraining and prohibiting them, their agents and employes, or any of them, and all persons acting under or by their advice and direction, from taking any steps of any kind or character what-

ever looking to the establishment, construction, maintenance, or operation of a system of waterworks in the said incorporated town of Tahlequah, Indian Territory, under the supposed and pretended authority, and under the terms and conditions of said alleged ordinance of said incorporated town of Tahlequah, and designated on the records of the council of said town as 'Ordinance No. 64'; and that the defendants, and each of them, are restrained from levying or collecting any taxes of any kind or character whatever within the incorporated town of Tahlequah, Indian Territory, upon the taxable property within said town, under or by virtue of the supposed and pretended authority contained in the alleged ordinance; and the mayor, recorder, and town council of the incorporated town of Tahlequah, Indian Territory, are restrained from enacting, passing, or adopting, or attempting to enact, pass, and adopt, any ordinance purporting to authorize construction and operation of a system of waterworks by any person or persons in violation of the form, meaning, and intent of the act of Congress approved May 19, 1902, and entitled 'An act for the protection of cities and towns in the Indian Territory and for other purposes,' and the mayor and recorder and town council of the town of Tahlequah are restrained from enacting, passing, or adopting, or attempting to pass, enact, and adopt, any ordinance purporting to authorize the use of the streets, lanes, and alleys of the town of Tahlequah and the town public springs by any person or persons or corporation for the construction and operation of a system of waterworks and pipe lines in violation of the rights of plaintiffs and to the streets, lanes, and alleys as secured by the said several acts, laws and treaties of the Cherokee Nation. This order shall take effect upon the plaintiffs entering into a good and sufficient bond according to law in the sum of $1,000." Whereupon the defendants appealed to this court.

  *Hutchings, Murphey & Parker* and *W. W. Hastings,* for appellants.

*J. L. Harnage* and *J. A. Veasey*, for appellees.

TOWNSEND, J.  Appellants filed demurrer that the appellees did not have legal capacity to sue, and to each paragraph separately of their complaint, on the ground that neither of them states facts sufficient to constitute a cause of action; and the overruling said demurrer, together with the action of the court in holding that appellants' franchise was void, and in granting the injunction prayed for, are the specifications of error assigned by appellants.  Appellants have discussed in their brief the questions involved under five different heads, and appellees have replied in their brief under nine different heads.

The first cause of action alleged by plaintiffs below (appellees here) is as follows:  That plaintiffs are residents, qualified electors, and taxpayers of the incorporated town of Tahlequah, Ind. Ter., one of the appellants and defendants below. That on the 27th day of October, 1903, the council of said town at a regular meeting adopted an ordinance known as "Ordinance No. 64," entitled "To provide for supplying with water the streets, lanes, alleys and public places in the incorporated town of Tahlequah, Indian Territory, and for the contracting with the Crystal Springs Water Company of Tahlequah, Indian Territory, a corporation organized under the laws of the United States in force in the Indian Territory, its successors and assigns, for the purpose of supplying with water such streets, lanes, alleys and public places."  That section 1 of said ordinance provides that said town contracts with the Crystal Springs Water Company, of Tahlequah, Ind. Ter., a corporation organized under the laws of the United States, one of the appellants and defendants below, for supplying with water the streets, lanes, alleys, and public places in said town.  Section 2 of said ordinance provides that said contract shall be in force for the term of 60 years, and said water company shall have the exclusive right to

operate waterworks for said time. That section 7 of said ordinance provides that said town agrees to rent from said water company 60 fire hydrants at a rental of $50 each per annum for 60 years. That section 10 of said ordinance provides that said town shall at the time of making the levy of taxes for each year levy sufficient tax for the payment of hydrant rental, to be known as "water tax." That section 11 of said ordinance provides that when the waterworks are completed and the recorder notified, a test thereof shall be made for an assurance of the capacity of said works to comply with the contract. That the adoption of said ordinance is illegal and void, as against public policy, the organic law, and the common right of the resident qualified electors and taxpayers of said town, for the reasons "that the plain and inevitable result of the said several clauses and provisions is to create a perpetuity and a monopoly in favor of certain of the defendants herein, as well as to deprive all future councils of said incorporated town of Tahlequah of their inherent right and authority to exercise proper legislative and governmental control over the subject-matter of the contract in controversy herein, and over the exceptional and exclusive rights, privileges, and franchises connected therewith and incident thereto; that by reason of which plaintiff taxpayers are compelled to pay a greatly increased rate of taxation upon all and singular their taxable property within said incorporated town of Tahlequah for a greatly excessive and wholly unreasonable period, and to their great, continued and irreparable loss and damage."

Appellants, in support of their contention, cite Mansf. Dig. § 755 (Ind. Ter. St. 1899, § 525), which is one of the sections of chapter 29, on the subject of "Municipal Corporations," adopted and put in force in this jurisdiction by the act of Congress of May 2, 1890, c. 182, 26 Stat. 94, and is as follows: "For the purpose of providing water, gas or street railroads, the

mayor and council may contract with any person or company to construct and operate the same, and may grant to such person or company for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose or purposes." Under said section the said town unquestionably had the power to contract with said company, and to grant to said company for the time agreed upon the exclusive privilege of using the streets and alleys of said town for waterworks purposes. In Walla Walla vs Walla Walla Water Company, 172 U. S. 13, 19 Sup. Ct. 82, 43 L. Ed. 341, the court said: "The argument of the city is that the council exceeded its powers in authorizing the contract with the water company for a continuous supply of water and the payment of rentals for twenty-five years, and that such contract was specially obnoxious in its stipulation that the city should not construct waterworks of its own during the life of the contract. The several objections to the contract are specifically stated by counsel for the city in their brief as follows: (a) The contract creates a monopoly, which, in the absence of an express grant from the Legislature of power so to do, or such power necessarily implied, is void as in contravention of public policy. (b) The contract is void as an attempt to contract away a part of the governmental power of the city council. (c) The contract is void as creating an indebtedness in excess of the charter limits. (d) The contract is in violation of the express provision of a general statute of the territory of Washington. By section 10 of the city charter the city is authorized 'to grant the right to use the streets of said city for the purpose of laying gas and other pipes intended to furnish the inhabitants of said city with light or water, to any persons or association of persons for a term not exceeding twenty-five years: * * * provided always, that none of the rights or privileges hereinafter granted shall be exclusive or prevent the council from granting the said rights to others'; and by section 11 'the city of Walla Walla shall have power to erect and maintain water works

within or without the city limits, or to authorize the erection of the same for the purpose of furnishing the city, or the inhabitants thereof, with a sufficient supply of water,'   *   *   *   Without expressing an opinion upon the point involved in that case, we are content to say that an ordinance granting a right to a water company for twenty-five years to lay and maintain water pipes for the purpose of furnishing the inhabitants of a city with water does not, in our opinion, create a monopoly, or prevent the granting of a similar franchise to another company.   Particularly is this so when taken in connection with a further stipulation that the city shall not erect waterworks of its own.   This provision is not devoid of an implication that it was intended to exclude only competition from itself, and not from other parties whom it might choose to invest with a similar franchise."   In Citizens' St. Ry. vs Jones (C. C.) 34 Fed. 580, Judge Caldwell says:   "The power granted to the mayor and council to contract on this subject is, as the act in terms declares, 'for the purpose of providing *   *   *   street railroads,' and it is for that purpose they are authorized to grant 'for the time which may be agreed upon, the exclusive privilege of using the streets and alleys of such city for such purpose.   *   *   *'   Section 755, Mansf. Dig.   It is the actual use of the street for the purpose that confers the exclusive privilege."   In Grand Rapids E. L. & P. Co. vs Grand Rapids E. E. L. & F. G. Co. (C. C.) 33 Fed. 669, the court says:   "It is also well settled that the right to use the streets and other public thoroughfares of a city for the purpose of placing therein or thereon pipes, mains, wires, and poles for the distribution of gas, water, or electric lights for public and private use, is not an ordinary business in which any one may engage; but is a franchise belonging to the government, the privilege of exercising which can only be granted by the state or by the municipal government of the city, acting under legislative authority.   *   *   *   In the light of the authorities, which fully establish this proposition, how can it be successfully maintained that the judgment of the

common council, or even of the courts, as to what is a reasonable period for the duration of a city's contract, is the measure or limit of its power in granting exclusive franchises in or over its streets? If the power rests in the city council to grant an exclusive privilege for 15 years, I cannot understand why the grant may not, under the same authority, be conferred for any longer period that may be determined on. The power requisite to confer an exclusive sovereign franchise for 15 years involves the exercise and operation of the same sovereign power which could make the grant for 100 or 1,000 years, or in perpetuity. If the authority does not exist to make the grant for the longer period, it does not exist to confer it for the shorter; for it requires the possession of the whole exclusive power and control to grant either the one or the other." In Mayor, etc., vs Houston City St. Ry. Co. (Tex. Sup.) 19 S. W. 128, 29 Am. St. Rep. 679, the court quotes the seventh section of an ordinance granting rights to the street railway company, which is as follows: "Seventh. That said street railway company, complying faithfully with the terms and conditions imposed by this ordinance, and the provisions of the charter of the city of Houston, as required by the city council, shall have and enjoy the right, powers, and privileges herein granted and conferred for a term of thirty years from and after the passage of this ordinance." And in passing upon that grant says: "We hold that, as the common council had legislative authority to grant the franchise in question, its duration was a matter for their exclusive determination. Whether it should be extended for two, five, or thirty years was left to their wisdom and discretion." In Andrews vs National Foundry & Pipe Works, 61 Fed. 787, 788, 10 C. C. A. 66, the court said: "* * * It is well settled that the Legislature of a state may confer the power to grant such franchises upon municipal corporations; though, when so granted, they are, nevertheless, to be regarded as derived from the state. The question here, therefore, is not whether the franchises of the Oconto Water Company

were obtained from the state. They necessarily came, directly or indirectly, from that source. It is whether or not the common council of Oconto had been given the power to grant such franchises, and in this instance did grant those named in its ordinance. Without that ordinance it is clear the water company could not lawfully have laid its pipes in the streets of the city, nor have put into practical effect its 'franchise to operate the plant,' if it can be said to have had such franchise, by reason merely of its act of incorporation, and before the ordinance was passed. The city of Oconto, by its own charter, had the power, and therefore was under the duty, of caring for the public health. That power it could employ in any reasonable way—if it chose, for instance, by contracting for a water supply through pipes laid in the streets. The making of such a contract would, of necessity, carry with it the right on the part of the contractor to lay the pipes and to operate the plant. Such right is a franchise, and, the making of the contract operating by necessary implication as a grant of the privilege or franchise, the power given to make the contract was power to grant the franchise. But, besides the power to provide for the health of its inhabitants, the city of Oconto had the express power, apparently not brought to the attention of the court below, 'to provide for the erection of waterworks for the supply of water to the inhabitants of the city.' We do not agree with the suggestion of counsel that by this provision the city had no right to contract for a supply of water, and was authorized only to construct and operate a plant of its own. The authority extended to any reasonable method; and it follows that, before the Oconto Water Company was incorporated, the city of Oconto, by its own charter, had power from the state to grant franchises like those in question to any person or body capable of receiving them." The legislative grant in the case at bar, it will be observed, is "for the time that may be agreed upon," which certainly clothes the city council with ample power to make the contract for the time mentioned.

The second cause of action alleged, after restating some of the provisions in the before-stated sections, and some of the provisions in additional sections, was that the adoption of said ordinance with its several clauses and provisions was an ultra vires act of said city council, and "that by reason of which plaintiffs, residents, qualified electors, and taxpayers of said incorporated town of Tahlequah, are deprived of the measure of protection in the matter of granting of exclusive franchises by the municipality that it is the policy and purpose of the law to afford, to their great, continued, and irreparable loss and injury." Appellants contend that appellees, as taxpayers, cannot maintain this action, and quote Levis vs City of Newton (C. C.) 75 Fed. 893: "No constitutional or statutory provision of this state bearing on the point under consideration is called to our notice. No decision of the Supreme Court of Iowa is cited as directly in point. The validity or invalidity of the ordinance as to this point is largely, if not entirely, a matter of local law. * * * Grant vs City of Davenport, 36 Iowa, 396, was a case wherein certain taxpayers of said city sought to restrain the city from carrying into effect a city ordinance which, among other provisions, purported to give a water company the exclusive right for 25 years, and thereafter an equal right with all others, of supplying the citizens of said city with water. There appears no limitation as to time. With reference to the objection urged against the validity of the ordinance, that it granted exclusive rights, the court declare (page 406); 'If any other person or company shall hereafter claim the right to lay down water pipes in the streets, he or it may then contest the validity of the exclusive privilege to do so granted by the ordinance to this water company. Until such a controversy arises, it is neither necessary nor proper for us to decide it.' Dodge vs City of Council Bluffs, 57 Iowa, 560, 10 N. W. 886, was heard on demurrer to the bill. Plaintiffs were taxpayers of said city, and sought to restrain the city from carrying into effect an ordinance which was claimed.

to be void because, among other reasons, it granted 'the exclusive privilege of laying pipes under the streets and alleys of the city, and of supplying the city and its inhabitants with water for fire protection, for manufacturing purposes, and domestic use,' to a water company, and bound the city for payment of money as water rental. It will be noticed that this ordinance purports to grant an exclusive right without limitation as to time. With reference to the claim that the ordinance was void because granting exclusive rights, the court say (page 566, 57 Iowa, and page 888, 10 N. W.): 'The ordinance purports to grant an exclusive right. Whether it was competent for the city to grant such a right we need not determine. If we should conclude it was not, it is manifest that the ordinance would not be void. It would result, merely, that the right granted is not exclusive, and plaintiffs, as mere taxpayers, cannot raise that question.' " There can be no question but what the city council, in making the contract with this water company, were acting strictly within the authority conferred by the Legislature, and, that being the case, the appellees had no authority to institute this proceeding, unless said ordinance is clearly illegal. The only time the taxpayer can proceed is when the proposed action by the municipal council is illegal. Judge Cooley, in his work on Taxation, discusses the matter fully, and we quote (vol. 2, pp. 1432, 1433): "Illegal Municipal Action. When a municipality or its officers take or threaten to take action in the creation of a debt or in the incurring of obligations, which, if allowed to go on, must eventually result in taxation, the only effectual remedy may be in enjoining such action in limine. As the action, if illegal, would constitute usurpation of authority, the state through its law officer has undoubted right to interfere by bill. But this is not always a satisfactory remedy, because the public authorities might be indisposed to resort to it, or to pursue it with sufficient vigor to render it effectual. The more common remedy, therefore, is for taxpayers to file bills on their own behalf. The right to do this

has been seriously contested in some cases, it being insisted that until a tax is actually laid the grievance, if any, is purely a public grievance, and public grievances must be redressed on the application of the proper public authorities. It is urged that individuals can proceed in equit— only when their interests are separate and individual; and such interests are only affected by the unlawful action when a tax is laid and has become an individual charge against the several persons taxed. On the other hand, it is said that the case is to be distinguished from the cases of purely public wrongs, in which the general public are alike concerned; that the taxpayers constitute a class specially damaged by the unlawful act in the increase of the burden of taxation upon their property. They have, therefore, a special interest in the subject-matter of the suit distinct from that of the general public, and the jurisdiction of equity may be sustained on the ground that the injury which would be done by the unlawful municipal action would be irreparable." Appellees cite Thrift vs Elizabeth City (N. C.) 30 S. E. 350, 44 L. R. A. 427, as an authority sustaining their contention, but the court in that case said: "It is admitted that there is no express statutory authority for such contract, and no legislative authority whatever, other than the section in the town charter authorizing the levy of taxes for general purposes, not to exceed 75 cents on the $100 valuation." Appellees cite Columbus Water Co. vs Mayor of Columbus (Kan. Sup.) 28 Pac. 1102, 15 L. R. A. 359, in which the court has collected the decisions of many state and federal courts, and cites the rule laid down by the United States Supreme Court, as follows: "The Supreme Court of the United States holds that, where there has been an express legislative grant, upon a condition of performance, in consideration of such performance and public service, after performance by the grantee it becomes a contract which is protected by the Constitution of the United States. A number of states—notably Tennessee and

Wisconsin—have said that such a grant is not a monopoly, and is fully protected, and held as inviolable as a contract between private parties or private corporations."

The other causes of action allege divers and sundry provisions of said ordinance in detail, which appellees claim state 'facts authorizing the court not only to take jurisdiction, but also state facts sufficient to sustain their cause of action. Appellants insist that the discretion of the city council in passing the ordinance and the reasonableness of the ordinance will not be looked into by the court in the absence of fraud or gross wrong, and appellees insist: "The reasonableness of an ordinance is open to judicial inquiry when it is passed in the exercise of general authority to legislate on the subject without prescribing the mode of its exercise." Appellants cite John W. Smith on Law of Municipal Corporations, § 525: "Reasonableness of the Ordinance. It is a well-settled principle that a municipal by-law or ordinance must be reasonable. If it be not reasonable, the courts will decline to enforce it, and it will be declared void as matter of law. But, as was said by Niblack, J., in an able opinion delivered in an Indiana case: 'An ordinance cannot be held to be unreasonable which is expressly authorized by the Legislature. The power of a court to declare an ordinance unreasonable, and therefore void, is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and consequently to cases in which the ordinance was passed under the supposed incidental power of the corporation merely.' So, when the Legislature expressly authorizes the municipality to pass any certain ordinance, that ordinance will be upheld, regardless of the opinion of the court as to its reasonableness or unreasonableness." In Hot Springs vs Curry, 64 Ark. 154, 155, 41 S. W. 56, the court said: "If an express power is given to a corporation to enact ordinances of a certain kind, the Legislature thereby trust to the discretion of the

council to determine just how far they shall go within the limits imposed, and there is every presumption that the council are not only actuated by pure motives, but that they are so familiar with the mischief to be remedied, and with defects of the prior regulations, as to be the best possible judges of the necessity for the enactment of the new law, and of the extent to which it is advisable to exercise the power granted. The council, and not the court, is the repository of this public trust, and it should be a plain case, indeed, to justify the latter in interfering with the determination of the council, or of questioning either their motives or the cogency of their reasons for enacting the ordinance. Surely, when an ordinance is, upon its face, purely within the terms of an express power, the court ought not to interfere on the ground of unreasonableness. It is restricted to consider the constitutionality of the act granting the power." In Illinois Trust & Savings Bank vs City of Arkansas City, 76 Fed. 282, 22 C. C. A. 181, 34 L. R. A. 518, the court said: "A city has two classes of powers—the one legislative, public, governmental, in the exercise of which it is a sovereignty, and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class it is governed by the rule here invoked. In their exercise it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class it is controlled by no such rule, because it is acting and contracting for the private benefit of itself and its inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation. Dill. Mun. Corp. (3d Ed.) § 66, and cases cited in the note; Safety Insulated Wire & Cable Co. vs City of Baltimore, 13 C. C. A. 375, 377, 378, 66 Fed. 140, 143, 144; San Francisco

Gas Co. vs City of San Francisco, 9 Cal. 453, 468, 469; Com. vs
City of Philadelphia, 132 Pa. 288, 19 Atl. 136; New Orleans
Gaslight Co. vs City of New Orleans, 42 La. Ann. 188, 192, 7
South. 559, 560; Tacoma Hotel Co. vs Tacoma Light & Water
Co., 3 Wash. St. 316, 325, 28 Pac. 516, 519, 14 L. R. A. 669, 28
Am. St. Rep. 35; Wagner vs City of Rock Island, 146 Ill. 139,
154, 155, 34 N. E. 545, 548, 549, 21 L. R. A. 519; City of Vincen-
nes vs Citizens' Gaslight Co., 132 Ind. 114, 126, 31 N. E. 573,
577, 16 L. R. A. 485; City of Indianapolis vs Indianapolis Gas-
light & Coke Co., 66 Ind. 396, 403; Read vs Atlantic City, 49
N. J. Law, 558, 562, 9 Atl. 759." It says further, as to its con-
tracting power, that the Legislature "vested in the mayor and
council of the city the rights to make such contracts for such
terms as, in their discretion, they thought proper." Appellees
cite Champer vs Greencastle (Ind. Sup.) 35 N. E. 15, 24 L. R. A.
770, 46 Am. St. Rep. 390. This was an action brought by the
town of Greencastle against Champer to recover the penalty pro-
vided for the violation of an ordinance, which ordinance provided
for the removal of all saloon screens and window blinds, and
providing a penalty. The court, in discussing the ordinance,
said: "The validity of the ordinance depends upon the answer
to the question, had the municipal corporation of Greencastle the
power to pass the ordinance? Municipal corporations have such
powers only as are conferred upon them by the act of the Legisla-
ture creating them, and such incidental powers as are implied by
their creation, and as are essential for the accomplishment of the
purposes of their creation and for their continued existence.
Lafayette vs Cox, 5 Ind. 38; Kyle vs Malin, 8 Ind. 34." Ap-
pellees cite the City of St. Louis vs Weber, 44 Mo. 550: "In
assuming, however, the right to judge of the reasonableness of an
exercise of corporate power, courts will not look closely into mere
matters of judgment where there may be a reasonable difference
of opinion." In Mt. Carmel vs Shaw (Ill.) 39 N. E. 584, 27 L.
R. A. 580, 46 Am. St. Rep. 311, it is said: "A court of equity

has no jurisdiction to interfere by injunction with the action of municipal authorities within their well-recognized powers, or in the exercise of a discretionary power, unless the power or discretion is manifestly being abused to the oppression of the citizen."

Appellees object on the ground that springs and parks dedicated to public use cannot be granted.     It is self-evident that municipal corporations cannot grant anything they do not own, and authorities to establish the proposition are quite unnecessary.

Appellees allege in their complaint that the act of Congress approved May 19, 1902, c. 816, 32 Stat. 200, repeals the laws of Arkansas on the subject of constructing waterworks.     There is no express repeal, and it is not in conflict with the laws of Arkansas already in force.     The act simply authorizes the towns to raise money by issuing bonds if they desire to construct their own waterworks; but appellees do not discuss that proposition in their brief, and therefore have presumably abandoned that contention.

We are of the opinion, from an examination of the authorities, that the court below erred in overruling the demurrer of appellants and in holding the franchise of appellants void, and in granting the injunction asked for by appellees.     We therefore reverse the ruling of the court below, and remand the cause.

RAYMOND, C. J., and CLAYTON, J., concur.