# CITY OF TULSA v. OKLAHOMA NATURAL GAS CO.

(District Court, E. D. Oklahoma. February 18, 1925.)

**1. Gas ⬤12—Contract with gas company held made by city in its proprietary or business capacity.**

Under Mansf. Dig. Ark. §§ 749, 754, 755, by Act Cong. May 2, 1890, extended to the Indian Territory, and providing that cities and towns shall have power to contract, to provide for lighting streets, to authorize the construction of gas works, and to contract with any person or company to construct and operate the same, with the exclusive privilege of using the streets and alleys for an agreed time for such purpose, as such provisions have been construed by the Supreme Court of Arkansas and the Court of Appeals of Indian Territory, which decisions are persuasive if not binding on a federal court, a city in making a contract with a gas company was acting in its proprietary or business, and not in its governmental, capacity.

**2. Courts ⬤369(1)—Federal courts exercise independent judgment on impairment of contracts by state legislation.**

Where state legislation is attacked in the federal courts as impairing the obligation of contracts in violation of the federal Constitution, such courts determine for themselves whether a contract exists and whether its obligation is impaired by the subsequent legislation.

**3. Courts ⬤366(1)—Federal court will follow state court's construction of state statute.**

In construing a state statute conferring power on a municipal corporation where doubt has arisen as to its proper interpretation, a federal court, in the exercise of its independent judgment, will follow the construction given it by the state court.

**4. Municipal corporations ⬤54—City political subdivision of state, exercising delegated powers.**

A city is a political subdivision of the state, created as a convenient agency for the exercise of such of the governmental powers of the state as may be intrusted to it.

**5. Municipal corporations ⬤64—Powers subject to legislative control of state.**

Municipal corporations have, in the absence of constitutional provisions safeguarding it to them, no inherent right of self-government which is beyond the legislative control of the state.

**6. Constitutional law ⬤127, 252—Municipality cannot invoke contract or due process clauses of federal Constitution.**

A state has power over the rights and property of cities which is unrestricted by the contract or due process clauses of the federal Constitution.

**7. Gas ⬤14(1)—Municipal contract with gas company held subject to modification as to rates by state Commission.**

A city in Indian Territory, under power conferred by Mansf. Dig. Ark. §§ 749, 754, 755,

extended to the territory by Act Cong. May 2, 1890, granted a franchise to a gas company for 25 years embodying a contract by the company fixing the maximum price to be charged for gas to consumers during the term. *Held*, that such contract was made by the city under its business powers and was binding on the parties, but was subject to modification as to rates by the Corporation Commission of Oklahoma, with the consent of the gas company.

In Equity. Suit by the City of Tulsa against the Oklahoma Natural Gas Company. On motion of defendant to dismiss bill. Motion granted.

Ira J. Underwood, Harry Halley, F. E. Riddle, and M. C. Rodolf, all of Tulsa, Okl., for plaintiff.

A. L. Harrison and L. W. Mason, of Tulsa, Okl., for interveners.

D. A. Richardson, of Oklahoma City, Okl. (Ames, Lowe, Richardson & Cochran, of Oklahoma City, Okl., of counsel), for defendant.

KENNAMER, District Judge. The city of Tulsa, Okl., was incorporated under the provisions of chapter 29 of Mansfield Digest of the Compiled Laws of Arkansas 1884, which laws had been extended over and put in force in the Indian Territory by an Act of Congress of May 2, 1890 (26 Stat. 94). By Act of Congress of June 28, 1898 (30 Stat. 499), power was given to incorporated municipalities to contract and to be contracted with. In the exercise of this power the city of Tulsa, on the 9th day of July, 1903, entered into a contract in the nature of a franchise with the grantors of the defendant herein, the Oklahoma Natural Gas Company, whereby the defendant or its grantor secured the right to the use of the streets, alleys, and public grounds belonging to the city of Tulsa in order to enable the gas company to furnish and deliver gas to the city and its inhabitants at a maximum rate of 25 cents per thousand cubic feet. On March 25, 1913, the Legislature of the State of Oklahoma passed a law (Laws 1913, c. 93) conferring jurisdiction upon the Corporation Commission of the State of Oklahoma over all utility corporations operating within the state, and with power to regulate rates, etc. In 1918 the Corporation Commission made an order, and subsequently made other orders, increasing the rates to be charged by the defendant in excess of the maximum rates provided for in the franchise granted by the city of Tulsa before Oklahoma was admitted to statehood. The city of Tulsa seeks to enjoin the Corporation Commission from enforcing its order compelling the Oklahoma Natural Gas Company to charge rates in excess of 25 cents per thousand cubic feet of gas, and further seeks to enjoin the Oklahoma Natural Gas Company from charging a rate in excess of the stipulated rate in the franchise.

The contention of counsel for the complainant, presented in their briefs and in the oral arguments, is that the municipality acted in its proprietary or business capacity in granting the franchise to the gas company, and that the contract entered into by the city with the defendant was one authorized by the laws of Arkansas which had been put into force in the Indian Territory by acts of Congress, and because the city was so authorized to contract, the franchise in question constituted an inviolable contract.

It was contended on behalf of the defendant that assuming the franchise constituted a contract authorized by law, which was a valid and existing contract, the municipality in so granting the franchise was exercising delegated or conferred power, and the acts of the city in granting the franchise were governmental in their nature. It was insisted that the municipality in granting the franchise was acting as an agent of the sovereign, and that the state of Oklahoma, through its Corporation Commission, may for and on behalf of the municipality, without its consent, abrogate or modify the contract, and such modification or abrogation is binding on the city.

It seems to have been settled as a matter of law that a municipal corporation may be authorized to establish by contract the rates to be charged by a public service corporation for a definite term, not unreasonable in time, and that the effect of such a contract is to suspend, during its life, the governmental power of fixing and regulating the rates. The existence of a binding contract as to the maximum rate for gas is the controlling issue, and this involves the question of whether or not the municipality had power to contract as to rates.

It is important to bear in mind that in many jurisdictions municipalities are authorized to regulate rates by express acts of the state Legislatures. In such jurisdictions, the regulation of rates by the municipalities is a governmental duty. In other jurisdictions, municipalities are given the power to contract as to rates, and in such instances the contracts are made by the municipalities in their proprietary or business capacity, and embody, as a term of such contracts, the rate at which the commodity or service is to be

furnished, and in such event there remains nothing to regulate.

Mr. Justice Moody, speaking for the court in the case of Home Telephone & Telegraph Co. v. City of Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176, wherein a similar question was before the court, said: "It is obvious that no case, unless it is identical in its facts, can serve as a controlling precedent for another, for differences, slight in themselves, may, through their relation with other facts, turn the balance one way or the other." Thus, it becomes necessary to carefully examine the facts and circumstances in this particular case in order to determine whether or not the city of Tulsa at the time of making the contract with the gas company or its grantors was possessed of the power to contract as to the rates to be charged for gas furnished its inhabitants.

[1] The franchise in question was entered into between the city of Tulsa and the grantors of the Oklahoma Natural Gas Company in 1903, under the authority of certain statutes of the state of Arkansas placed in effect in the Indian Territory by an Act of Congress of May 2, 1890. The pertinent sections are the following: Section 749 of Mansfield Digest, which in part says: "Cities or incorporated towns ‹ * * shall be * * * capable to sue and be sued, to contract and be contracted with. * * * *" Section 754 provides that cities or incorporated towns "shall have power to provide for lighting the streets and alleys of the city by gas or otherwise, and to authorize the construction of gas works and of street railroads." And section 755: "For the purpose of providing water, gas or street railroads, the mayor and council may contract with any person or company to construct and operate the same, and may grant to such person or company for the time which may be agreed upon the exclusive privilege of using the streets and alleys of such city for such purpose or purposes."

These sections of Mansfield's Digest were placed in force in the Indian Territory with the constructions placed thereon prior to their adoption by the Supreme Court of Arkansas. The Act of Congress of May 2, 1890, which gave effect to the laws of Arkansas in the Indian Territory, did not reserve to Congress any supervisory power over fixing of rates for public utilities, and neither this act nor any other act of Congress attempted to create or provide for any body or commission with powers to exercise the authority of a utility commission.

In determining the powers of a municipal-

ity in the Indian Territory under the sections of the Arkansas statute extended by acts of Congress to the Indian Territory, I am unable to look to the decisions of the Supreme Court of the state of Oklahoma, since these provisions were in force and the franchise granted prior to the admission of Oklahoma into the Union. However, in construing these provisions of the Arkansas statute, decisions by the Supreme Court of Arkansas and the Court of Appeals of the Indian Territory are enlightening.

That the franchise in question is a contract entered into under the proprietary power of the municipality there is little doubt. Such is the construction placed upon similar contracts under the sections of the statute above set forth. In Arkansas Light & Power Co. v. Cooley, 138 Ark. 390, 211 S. W. 664, Mr. Justice Hart, speaking for the court, said: "In making the contract the municipality was acting for the private benefit of itself and its inhabitants, and its contracts of that character are governed by the same rules that govern contracts of private individuals." Also, in Lackey v. Fayetteville, 80 Ark. 108, 96 S. W. 622, the court said: "In fixing the terms of such an ordinance the council is acting in a proprietary and ministerial or business capacity rather than legislative." A similar construction was placed upon the statutes by the Court of Appeals of Indian Territory in the case of Incorporated Town of Tahlequah v. Guinn, 5 Ind. T. 497, 82 S. W. 886, where the court said: "Under said section the said town unquestionably had the power to contract with said company, and to grant to said company for the time agreed upon the exclusive privilege of using the streets and alleys of said town for waterworks purposes."

There is a clear distinction between those powers of a municipality which are governmental in their nature and which the sovereign cannot surrender, and those under which the city acts in a proprietary capacity for the purpose of securing to its citizens certain benefits for which any private individual might contract. Judge Sanborn remarked in City of Winona v. Botzet, 169 F. 321, at 332, 94 C. C. A. 563, 574 (23 L. R. A. [N. S.] 204): "A city has two classes of powers, the one legislative, public, in the exercise of which it acts as a political subdivision and delegate of the state and governs its people, the other private, corporate, business, in the exercise of which it acts for the advantage of the inhabitants of the city and of itself as a legal personality. * * * But for damages caused by the wrongful acts

and omissions of its officers and agents within the scope of their authority in the exercise of its powers of the latter class, such as its power to build and maintain bridges, streets, and highways, the power to construct and keep in repair sewers, * * * the power to collect refuse and to care for the dump where it is deposited, * * * the power to construct and operate the draws of bridges, * * * and the power to build, maintain, and operate waterworks to furnish water to the city and to its inhabitants for compensation, * * * the city is liable to the same extent as a private individual or corporation under like circumstances. The power of a city to construct and operate waterworks is not a political or governmental, but a private or corporate, power, granted and exercised, not to enable it to control its people, but to authorize it to furnish to itself and to its inhabitants water for their private advantage." Further quoting Judge Sanborn, in Omaha Water Co. v. City of Omaha, 147 F. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614, in dealing with a contract made by the city of Omaha for the supplying of water to its inhabitants: " * * * The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city and for its denizens." On page 6, 77 C. C. A. 272, he says: "The making of a contract for the construction and operation of waterworks wherein the parties agree what rates may be collected by the owner of the works from private consumers during a reasonable term of years is the exercise of one of the business powers of the corporation. The purpose of such a contract is not to regulate rates, for there are no .rates to regulate. It is to procure water and to get rates for the city and for its inhabitants."

The Oklahoma Supreme Court has held that a city has the two classes of powers (City of Shawnee v. Roush, 101 Okl. 60, 223 P. 354), and has likewise held that such a contract as herein involved, in passing upon a similar ordinance, made under the same statute involved in this consideration, that the Sapulpa franchise was a contract and as such governed by the same rule of construction as any other contract between individuals or private corporations (Sapulpa v. Sapulpa Oil & Gas Co., 22 Okl. 347, 97 P. 1007).

[2] It is well settled that where state legislation is attacked in the federal courts, as impairing the obligation of contract in violation of section 10, art. 1, of the Constitution of the United States, the federal courts determine for themselves whether contractual rights exist and are impaired by the subsequent legislation. Milwaukee Electric Ry. & Light Co. v. State of Wisconsin ex rel. City of Milwaukee, 252 U. S. 100, 40 S. Ct. 306, 64 L. Ed. 476, 10 A. L. R. 892; Birmingham Waterworks Co. v. City of Birmingham (D. C.) 211 F. 497.

In this case, as previously stated, the contract involved is one that was entered into by the parties in the year 1903, under the authority of certain sections of Mansfield's Digest of the laws of Arkansas, which were in force in the Indian Territory, and the rights of the parties must be determined by a proper construction of the extended sections of the Arkansas law, which in effect were special acts of Congress.

[3] In construing a state statute conferring power upon a municipal corporation, where doubt has arisen as to the proper interpretation to be placed upon such statutes, this court in the exercise of its independent judgment will cause such judgment to preponderate in favor of the construction given by the state court to its own statute. Board of Liquidation v. Louisiana, 179 U. S. 622, 638, 21 S. Ct. 263, 45 L. Ed. 347. However, this qualification is not a limitation upon the duty of the court to form an independent judgment.

Since the highest court from where the statute was adopted (Arkansas), the Indian Territory Court of Appeals, and the Supreme Court of Oklahoma, have construed the statutes under which the franchise in controversy was granted, and definitely held that the city of Tulsa in granting the franchise was acting in its business or proprietary capacity, the acceptance of the franchise by the grantees constituted a valid enforceable contract for the term of years provided for in the franchise. At the time the contract was entered into, the sovereign was not attempting to exercise regulatory powers over such a transaction by regulating rates, and it seems clear that Congress in extending the sections of the Arkansas laws into the Indian Territory was not attempting to confer upon the municipality any power in its nature governmental for the purpose of regulating rates. Its only intent was to confer upon the municipality the power in its proprietary capacity to contract with any proper person or corporation for the purposes of supplying the inhabitants of such municipality with gas for fuel and lighting. In view of the fact that the municipality was vested with the power of granting the exclusive privilege for such purposes for a

reasonable number of years, it seems to follow that, under this power such municipality was vested with the authority to fix the compensation which its inhabitants were to pay for gas to such person or corporation receiving so valuable a grant.

I am therefore clearly of the opinion that the United States Congress, in extending the applicable sections of the Arkansas statute in force in the Indian Territory, authorized the city of Tulsa to contract with the defendant herein, or its grantors, to supply the inhabitants of the city with gas for a period of 25 years, and that the contract was executed by the city in its proprietary or business capacity, and that such contract would still be binding on the parties but for the fact that the state, by and through the Corporation Commission, has abrogated the rate provision with the consent of the gas company. The section of the statutes extending in force are just as broad in their provisions as the statute construed in the case of Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 S. Ct. 762, 769, 51 L. Ed. 1155, where the court said, at page 515: " * * * Under a broad grant of power, conferring, without restriction or limitation, upon the city of Vicksburg the right to make a contract for a supply of water, it was within the right of the city council, in the exercise of this power, to make a binding contract, fixing a maximum rate at which water should be supplied to the inhabitants of the city for a limited term of years, and, in the absence of a showing of unreasonableness 'so gross,' as the court of Mississippi has said, 'as to strongly suggest fraud or corruption,' this action of the council is binding, and for the time limited puts the right beyond legislative or municipal alteration to the prejudice of the other contracting party."

[4-7] It appears to be a well-established rule that a municipal corporation is but a political subdivision of the state, exists by virtue of the exercise of the power of the state through its legislative department, and that such municipalities have no power except as delegated by the sovereign. Such corporations being mere creatures of the state, their powers may be enlarged, modified, or diminished by the state without their consent, and the distinction between a municipality as an agent of the state for governmental purposes, and as an organization to administer local needs in a business or proprietary capacity, afford no ground for the application of the contract or due process clauses of the federal Constitution against a state in favor of its own municipalities. This appears to be the rule for the reason such municipalities are always subject to the control of the state. The state may revoke, enlarge, or set aside the acts of its own municipalities. The result of this well-established rule is that the contract in question was modified as to rates by the order of the Corporation Commission, with the consent of the gas company, and such modification is binding on the city. City of Salem v. Salem Water, Light & Power Company, 255 F. 295, 166 C. C. A. 465; City of Trenton v. State of New Jersey, 262 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471; Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, 39 S. Ct. 526, 63 L. Ed. 1054; Laramie County v. Albany County, 92 U. S. 307, 25 L. Ed. 552; Hunter v. City of Pittsburg, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151; City of Sapulpa v. Okl. Natural Gas Co., 258 U. S. 608, 42 S. Ct. 316, 66 L. Ed. 788.

Mr. Justice Butler, in delivering the opinion in City of Trenton v. State of New Jersey, supra, in discussing the distinction between the governmental and proprietary power of municipalities, said: "The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations. But such distinction furnishes no ground for the application of constitutional restraints here sought to be invoked by the city of Trenton against the state of New Jersey. They do not apply as against the state in favor of its own municipalities. We hold that the city cannot invoke these provisions of the federal Constitution against the imposition of the license fee or charge for diversion of water specified in the state law here in question. In view of former opinions of this court, no substantial federal question is presented. Pawhuska v. Pawhuska Oil Co., supra, and cases cited."

This case apparently holds that the governmental as distinguished from private or proprietary capacity of a city may not be invoked by a city so as to invalidate any act of the state. This rule having been established, the motion to dismiss bill is sustained for the reason the bill of complaint fails to state a cause of action.