BRUMMITT et al. v. OGDEN WATERWORKS CO. et al.

No. 1885.   Decided February 2, 1908 (93 Pac. 829).

1. MUNICIPAL CORPORATIONS—FISCAL MANAGEMENT—REMEDIES OF TAXPAYERS. Where a city enacts an ordinance regulating its relations with a water company which provides for excessive rates for the use of water for municipal purposes, a taxpayer may sue to enjoin the waste of public funds, though the taxes of others are proportionally raised.

2. SAME—ULTRA VIRES ACTS. A taxpayer may sue for relief against the waste of public funds by unauthorized or *ultra vires* acts of the municipality, in the absence of a special statute requiring a particular officer to sue for the benefit of all taxpayers. Hence, if a city enacts an invalid ordinance regulating its relations

with a water company so as to bind itself to pay unreasonable rates or to require the payment of unjust charges by the public, taxpayers affected directly as users of water or indirectly as taxpayers may sue to enjoin the enforcement of the ordinance.

3. SAME—DISCRETIONARY ACTS. Where a city is acting within its authorized powers, a taxpayer cannot arrest its acts merely because they would be unwise or extravagant, nor in any matter that is purely legislative or discretionary.

4. WATERS—PUBLIC WATER SUPPLY—RATES—REASONABLENESS—PRESUMPTION. In the absence of a showing to the contrary, it will be presumed that water rates agreed upon between a city and a water company are fair and reasonable.

5. APPEAL — SCOPE OF REVIEW — QUESTIONS CONSIDERED — CITY ORDINANCE — GROUNDS OF INVALIDITY. In an action by taxpayers to enjoin the enforcement of an ordinance regulating the relations between a city and a water company, where the ordinance is pleaded and made a part of the complaint, whether a particular provision is legal or illegal, in connection with the other provisions and the allegations of the complaint, may present a mere question of law, and, if it does, the grounds of illegality of the particular provision need not be specially pleaded to authorize its consideration on appeal, if the rights of plaintiffs are affected thereby.

6. MUNICIPAL CORPORATIONS — VALIDITY OF ORDINANCES — REMEDY OF TAXPAYER. A taxpayer cannot sue to enjoin the enforcement of an ordinance, even though it is invalid, unless his rights are affected.

7. MONOPOLIES — GRANT — CONSTRUCTION — EXCLUSIVENESS. Unless a grant is expressly made exclusive, it will not be so construed except by unavoidable implication arising from the terms used in the grant.

8. MUNICIPAL CORPORATIONS — FISCAL MANAGEMENT — REMEDIES OF TAXPAYERS — INJUNCTION — ENFORCEMENT OF ILLEGAL ORDINANCE. Where an ordinance granting rights to a water company for fifty years is not prohibited by statute, and does not prevent others from receiving the right to supply inhabitants with water, and at most grants a monopoly of the right to furnish water to the city for that time, its enforcement cannot be enjoined in an action by taxpayers who have no direct or personal interest therein.

9. SAME—INVALIDITY OF PART OF ORDINANCE—EFFECT. Though a part of an ordinance fixing the relations between a city and a water company is invalid, if it does not affect the interests of the taxpayers who are suing to restrain its enforcement, the effect of the invalid portion upon other provisions need not necessarily be considered in an action by the taxpayers to enjoin the enforcement of the ordinance.

10. WATERS—PUBLIC WATER SUPPLY—RATES—AUTHORITY OF MUNICI-
PALITY TO FIX — RIGHT — WAIVER. The fixing and regulation of
water rates is a governmental function which cannot be surrendered
or suspended by the city council.

11. MUNICIPAL CORPORATIONS—REGULATION OF RATES OF PUBLIC SER-
VICE. Municipalities in this state cannot enter into binding con-
tracts regarding rates for services rendered to the public, for the
right to regulate and fix such rates cannot be surrendered, in the
absence of a constitutional or statutory authority.

12. SAME—ORDINANCES—EFFECT OF PARTIAL INVALIDITY. The fact that
a city ordinance is invalid in part because it attempts to suspend
its right to regulate water rates will not render the rest of the
ordinance invalid, since, on account of its invalidity, that portion
could have no effect.

13. SAME — REMEDIES OF TAXPAYER — CONTESTING VALIDITY OF ORDI-
NANCES. A taxpayer cannot sue to declare invalid or restrain the
enforcement of an ordinance regulating relations with a water com-
pany, even though it contains invalid provisions which would affect
his rights, if they could be enforced, for, if they are illegal, they can-
not be enforced by the water company, and would be no defense
to the enforcement of the taxpayer's right against the company.

14. WATERS—PUBLIC WATER SUPPLY—WATER RATES. The fact that
an ordinance regulating the relations of the city with a water com-
pany authorizes the company to fix reasonable rates to be paid by
the public in certain instances does not invalidate the ordinance,
since, if the rates are reasonable, it is immaterial who fixes them.

15. MUNICIPAL CORPORATIONS — REMEDIES OF TAXPAYERS — ENJOINING
ENFORCEMENT OF ORDINANCES. A taxpayer cannot sue to enjoin the
enforcement of an ordinance relinquishing the city's right to pur-
chase a water plant, since the question of purchase is discretionary
with the council, and is not a proper subject of judicial review.

16. SAME—ALTERATION OF FORMER CONTRACT. An ordinance readjust-
ing water rates and regulating relations with water company, which
requires payment for water used on school lawns during a certain
season, is not invalid merely because the company was required
to furnish free water for the public schools and grounds under a
former agreement, and a taxpayer cannot sue to enjoin the enforce-
ment of the ordinance on that ground, for the wisdom of the ordi-
nance is not a matter for judicial review.

17. WATERS—PUBLIC WATER SUPPLY—RIGHT OF CITY TO DISPOSE OF
WATER RIGHTS—CONSTITUTIONAL PROVISION. Constitution, art. 11,
section 6, provides that no municipal corporation shall directly or
indirectly lease any water rights or sources of water supply con-
trolled by it, but all such rights, etc., shall be preserved, maintain-
ed, and operated by it for supplying its inhabitants with water at

reasonable charges; provided that nothing herein contained shall be 'construed to prevent an exchange of water rights or sources of water supply for others of equal value, and to be devoted in like manner to the public supply of its inhabitants. Prior to the time the Constitution went into effect a city had made a contract purporting to lease certain water rights to one who agreed to construct and operate a system of waterworks to supply the city, etc., under which the lessee was to furnish certain free water to the city. After the Constitution was adopted the city passed an ordinance regulating its relations with the company which succeeded to the rights of the lessee in which some changes in rates, etc., were made, and this ordinance granted to the company the use of the water rights for a term of fifty years as a part of the arrangement; but the city was still to receive considerable water for public purposes free of charge. *Held*, that the ordinance was in effect a mere continuance of the former contract, and the disposition of the city's water right was valid.

18. SAME. Even if the ordinance were to be construed as a new contract, it would not be invalid merely because it is called a lease, since the water belonging to the city was devoted to its use under the contract.[1]

19. CONSTITUTIONAL LAW—CONSTRUCTION—MEANING OF LANGUAGE. In determining whether an act is unconstitutional within the meaning of a certain provision, it must fall within the spirit of the constitutional inhibition, and not merely within the technical language used, for Constitutions like other laws are not to be interpreted alone by their words abstractly considered, but the language should be read in the light of the conditions which are to be met and the objects to be attained.[2]

20. WATERS—PUBLIC WATER SUPPLY—RATES. Where an ordinance regulating relations with a water company and granting the company a right to use the streets, etc., fixes the rates for the entire period of the contract, that provision cannot be upheld, but the city council may fix temporary rates. Both the city and its taxpayers may sue to enforce reasonable rates, and the water company may sue to prevent the enforcement of confiscatory rates. Hence, the entire ordinance is not vitiated by an agreement of the council that a certain rate for hydrants should be maintained during the fifty-year period covered by the ordinance.

---

[1] Ogden City v. Waterworks Irrigation Co., 28 Utah, 25, 76 Pac. 1069.

[2] State v. City Council, 26 Utah, 13, 64 Pac. 460.

APPEAL from District Court, Second District; J. A. Howell, Judge.

Action by James J. Brummitt and others against the Ogden Waterworks Company and another. From a judgment for defendants, plaintiffs appeal.

AFFIRMED.

J. D. Skeen, James N. Kimball, Dey & Hoppaugh, and R. S. Varian for appellants.

Van Cott, Allison & Riter, and Howat & Macmillan for respondents.

APPELLANT'S POINTS.

The covenants on the part of the waterworks company being given in consideration of valuable privileges conferred, became the law applicable in the particular case and are just as binding as if they were enacted in the statutes or the constitution of this state. (*Water Co. v. San Diego*, 59 Cal. 517; *Flynn v. Water Co.* [Minn.], 77 N. W. 38; *State v. Railroad* [Minn.], 81 N. W. 200; *State, etc., v. Railroad* [Minn.], 83 N. W. 32; *Poppleton v. Moores* [Neb.], 88 N. W. 128; *State v. Gates*, 2 L. R. N. S. 152.)

The law is settled that a city council cannot delegate authority vested in them by the laws of the state, much less delegate the authority that some council in the future might exercise to an unnamed and uncontrolled committee. (*Eureka City v. Wilson*, 15 Utah 73; *Birdsall v. Clark*, 73 N. Y. 73, and note; 29 Am. Rep. 105 and note; *Davis v. King*, 50 Am. St. 118; *Hyde v. Joyes* [N. Y.], 96 Am. Dec. 311; *Lyon v. Jerome* [N. Y.], 37 Am. Dec. 271; *Stockton v. Crainer*, 45 Cal. 643.)

Courts uniformly recognize the authority of taxpayers to restrain municipal corporations from transcending their lawful powers, and a court will even enjoin the mere entering into of a void contract. (First Smith on Municipal Corporations, sec. 667 and note 79, containing numerous citations; *Handy*.

33 Utah—19

v: New Orleans,— So. 593; Crompton v. Zabriskie, 191 U.
S. 601; Valparaiso v. Gardner [Ind.], 49 Am. Rep. 416;
State v. Gates [Mo.], 2 L. R. A., N. S. 152; Poppleton v.
Moores [Neb.], 88 N. W. 129, in point.)

This ordinance is a contract of a quasi-public character, but
so far as the contractual relationship is concerned, it is gov-
erned by the same rules as contracts between private individu-
als. Construed under the rules of construction in such cases it
would certainly be held void. The court is not constituted for
the purpose of making contracts for individuals and no con-
struction can aid a contract that is void. (State v. Gates
[Mo.], 2 L. R. A., N. S. 152; Dartmouth College v. Wood-
ward, 4 Wheaton 518; St. Louis v. Telegraph Co., 248 U. S.
92; 1 Smith, Municipal Corporations, sec. 532, note 252;
New Orleans v. Great South Tel. Co. [La.], 3 So. 533.)

## RESPONDENT'S POINTS.

Furnishing water by a city to its inhabitants is not a gov-
ernmental function nor a municipal duty. It is the exercise
of a business power and function of the municipality. (Og-
den City v. Waterworks Co., 28 Utah 41; Western, etc., So-
ciety v. Philadelphia, 31 Pa. St. 183; Insurance Co. v. Phila-
delphia, 88 Pa. St. 394; Bailey v. City, etc. [Pa.], 39 At.
494; Wagner v. Rock Island, 146 Ill. 153; People ex rel. v.
Common Council, 15 Am. Rep. 209; Water Co. v. City, 147
Fed 1.)

But if it were true that the city council exceeded its author-
ity in leasing the water right by the ordinance in question,
still the execution of the lease in excess of authority does not
in any way invalidate the ordinance. (Hitchcock v. Galves-
ton, 96 U. S. 341; Field v. Clark, 143 U. S. 649, 694-697,
700; Bank v. City, 76 Fed. 271, 34 L. R. A. 518, 524; Mc-
Pherson v. Foster, 43 Iowa 57; Water Co. v. City [Iowa],
91 N. W. 1081; Cooley, Const. Lim. [5th Ed.], 211.)

The general principle is stated in Pollock's Principles of
Contracts, p. 348, as follows: "A lawful promise made for a
lawful consideration is not invalid by reason only
of an unlawful promise being made at the same time

and for the same consideration." The learned author proceeds, quoting from the *Bank v. Breillat,* 6 Moo. P. C. 152, 201, "accordingly, from Pigot's case (11 Co. Rep. 27-b) to the latest authorities it has always been held that when there are contained in the same instrument distinct engagements by which a party binds himself to do certain acts, some of which are legal and some illegal at common law, the performance of those which are legal may be enforced, though the performance of those which are illegal cannot." The same result is reached where the illegality is created by statute, provided always that the illegal can be severed from the legal; per Willes, J., in *Pickering v. Railroad Co.,* L. R. 3 C. P., 250. The rule is well illustrated in *Price v. Green,* 16 M. & W. 346. (*Railroad v. Pullman Car Co.,* 139 U. S. 79, 91; *Telegraph Co. v. Railroad,* 11 F. 1, 4, and cases cited in note; *Horse Co. v. Transit Co.,* 24 F. 306; *Oregon Steam Nav. Co. v. Winson,* 20 *Wall,* 64, 71; *Bank v. Arkansas City,* 76 F. 280.)

Whether it was an act of wisdom to make the new contract and change the terms of the Bothwell contract was entirely within the power and discretion of the city council, and cannot in the absence of fraud, be inquired into by the court. (1 Dillon, Mun. Cor. [4th Ed.], secs. 50, 94; *Goodrich v. Chicago,* 20 Ill. 445; *St. Louis v. Boffington,* 19 Mo. 15; *Kelly v. Milwaukee,* 18 Wis. 83; *Gas Co. v. Des Moines,* 44 Iowa 505, 509; *Janeway v. Duluth* [Minn.], 68 N. W. 24; *Moore v. Walla Walla,* 60 Fed. 961.)

With respect to contracts that it is authorized to make, a municipal corporation has the same rights and remedies and is bound thereby and may be sued thereon in the same manner as individuals. (*Ogden City v. Waterworks Co., supra; Dillon,* Mun. Cor. [4th Ed.] sec. 472; *Safety, etc., Co. v. Baltimore,* 66 Fed. 140.)

As between parties standing on the same footing, courts do not inquire whether they contracted wisely or foolishly. Their business is to see that contracts are performed as made by the parties. (*Hansen v. Ylurria* [Tex.], 48 S. W. 795, 797.)

The court will not restrain, control or coerce the action of a municipal corporation on the ground that it is merely unwise,

extravagant, erroneous or a mistake of judgment. (*Wells v. Atlanta*, 43 Ga. 67; *Torrent v. Muskegon*, 47 Mich. 115, 41 Am. Rep. 715.)

FRICK, J.

This action was commenced December 12, 1906, by the plaintiffs, as tax payers and water users, for equitable relief by injunction. In 1889 the defendant Ogden City entered into a contract with one J. R. Bothwell whereby he agreed to construct and operate a system of waterworks to supply Ogden City and its inhabitants with water for all purposes. Ogden City, on its part, granted Bothwell the right to lay the pipes to be used in the water system in the streets, alleys, and public places of the city. The contract was for no definite time, and in connection therewith the city leased to said Bothwell its water right amounting to 0.98 of a second foot of water "for the full time that said Bothwell or assigns furnishes water through its system" of waterworks. The defendant waterworks company (hereinafter called "company") succeeded to all the rights of Bothwell under said contract, and for a long time prior to and at the commencement of this action owned and operated the system of waterworks constructed by Bothwell as aforesaid. A further history leading up to the making of the contract and the conditions under which it was entered into and executed are all set forth in the case of *Ogden City v. Waterworks & Irrigation Co.*, 28 Utah 25, 76 Pac. 1069, to which we refer for a more complete statement. We shall only refer to such parts here as are deemed essential to an understanding of the points passed upon in this opinion. In the Bothwell contract the rates agreed upon were as follows: For the first one hundred hydrants, $75 a year each; for any number above one hundred, $60 a year each; for "city buildings, public schools, and grounds, public fountains and water troughs, parks, city squares, and lawns, street sprinkling and all other municipal uses of water, free." The rates were to be reduced ten per cent. after three years, and another ten per cent. after six years. Extensions were to be made as fast as the consumption of water by users should produce a revenue

of eight per cent. on the cost of extensions. The city also reserved the option to purchase the system of waterworks by paying therefor the original cost of construction, to be paid for either in cash or in 6 per cent. city bonds. This option did not include a certain conduit which was part of and connected with the waterworks system. In addition to the waterworks the city was also to purchase the water rights owned by Bothwell, the value of which was to be ascertained by appraisers chosen by the parties. Before the city could exercise its option to purchase it was required to pay Bothwell the sum of $150,000, payment thereof to be made in three annual installments, which was to be for the perpetual right to use the conduit above mentioned. Much litigation ensued, a part of which culminated in the case referred to in 28 Utah, *supra.* In 1906 it seems a full adjustment and settlement of all differences between the parties was had, and in pursuance of which, the terms and conditions of the Bothwell contract, under which the company was operating the waterworks system, were modified in certain respects by an ordinance passed by the city on September 24, 1906, and duly accepted by the company on October 1st of the same year. It is this ordinance that is called in question in this proceeding by the water users and tax payers. The purpose of the action is to declare the ordinance illegal and void, and to enjoin its further enforcement by the city and the company. In the ordinance the rates for fire hydrants were fixed at $35 each. The city was also to receive free water for the following purposes: For all public buildings and grounds used for city purposes; for flushing public sewers; for washing paved streets and gutters; for five public drinking fountains, and an additional one for every five thousand increase in population; for five watering troughs, and an additional one for each five thousand increase in population over twenty-thousand for sprinkling city streets; for public school buildings and grounds, except for the water used on lawns from June 1st to September 15th; for sprinkling all the city parks, city hall square, city hospital grounds, and lawns at the library building, and for parking the centers of all streets. In addition to this the company agreed to pay the city

an annual license or occupation tax of $2,500. The right to occupy the streets and to furnish water was limited in the ordinance to fifty years. The city also, as in the Bothwell contract granted the company the use of the 0.98 second foot of water during the term aforesaid. Extensions were also provided for upon the same terms as in the Bothwell contract. The right was also given the company to set and maintain water meters in any building except residences, and to charge for water at meter measurements instead of the rates fixed by the ordinance. It was also provided that "consumers shall have the right to have meters set and pay for water by meter measurement. Meters will be of such make and size as may be approved by the waterworks company, and will be furnished and maintained in good order by the consumer." The ordinance also contained a schedule of water rates to be paid by the consumers of water. These rates were not to be increased nor diminished during the term for which the right was granted, except that all rates, not including fire hydrants, should be readjusted "every ten years by a committee of three, one to be appointed by the city council, one to be appointed by the waterworks company, and these two to appoint a third member." For the use of water not specially designated in the schedule of rates the company was authorized to fix a reasonable rate. Ogden City also agreed to pay the sum of $10,000 to the company as a full and complete compromise and settlement of all prior claims against the city for water rentals or for any and all other claims arising out of the prior litigation and rights or claims existing between the parties, and of all matters pertaining thereto. The amount of these claims does not appear, but it is fairly inferable that they were much in excess of the $10,000 mentioned. In their complaint the plaintiff's attack the ordinance on the following grounds. That the city had no power to lease the 0.98 second foot of water; that it had no authority to waive the option right of the city to purchase the waterworks system provided for in the Bothwell contract; that the city, without legal authority, authorized the payment of extra compensation to the company for the performance of duties which it was already bound to perform;

that the city had no power to waive, suspend, or relinquish the right to fix and regulate the water rates for the use of water, as contemplated in the ordinance; that the water rates fixed in the ordinance are exorbitant, unreasonable, and excessive. The plaintiffs further alleged that the city and the company threaten to enforce all and singular the matters complained of, and prayed that they be enjoined. The defendants filed separate answers to the complaint. The company admitted the making of the Bothwell contract set forth in the complaint, the passage and acceptance of the ordinance, the corporate character of defendants, and that it intended to carry on its· water system and enforce the rates mentioned in the ordinance. It further answered that as to the leasing of the 0.98 second foot of water such alleged lease was only an extension or renewal of the right to said water provided for in the Bothwell contract, and that it was the intention of the company and the city that the company should continue the flow of said water through its pipes the same as theretofore, so that the city would not lose or forfeit its rights to said water by a nonuser thereof. It denied all other allegations of the complaint. The city's answer is practically the same as that of the company. Upon these issues a trial was had to the court, which found all the issues in favor of the defendant, and accordingly entered judgment against the contentions of the plaintiffs, from which they appeal.

Before proceeding to the merits we will dispose of the preliminary question which is raised by the defendants. It is asserted that the plaintiffs have no standing in court in their capacity merely as taxpayers. One of the plaintiffs, however, claimed to be directly affected by the water rates which were claimed to be unreasonable and excessive. But, waiving this point, a general taxpayer of the city certainly is affected in case the city is devoting public funds to the payment of excessive and unreasonable rates for the use of water for municipal purposes. To the extent that the water rates are excessive his taxes are increased, and the mere fact that it increases in like proportion the taxes of all other taxpayers does not deprive him of the right to maintain an action to arrest the waste of

public funds. The weight of authority is clearly to the effect that a taxpayer may obtain relief against the waste of public funds through the unauthorized or *ultra vires* acts of the municipality, where there is no special statute by which some particular officer is designated in whose name the action must be brought for the benefit of all taxpayers. (*Crampton v. Zabriskie,* 101 U. S. 609, 25 L. Ed. 1070; *Read v. Atlantic City,* 49 N. J. Law 559, 9 Atl. 759; *Grand Island Gas Co. v. West,* 28 Neb. 852, 45 N. W. 242; *Packard v. Hayes,* 94 Md. 233, 51 Atl. 32; *Gibson v. Board of Supervisors,* 80 Cal. 359, 22 Pac. 225; *Meyer v. Town of Boonville,* 162 Ind. 165, 70 N. E. 146; *Dyer v. City of Newport,* 94 S. W. 25, 29 Ky. Law Rep. 656.) Upon the other hand, where a city is acting within its authorized powers, a taxpaper may not arrest its acts merely because such acts will be unwise, improvident, or extravagant; nor may he do this in any matter that is purely legislative or discretionary. This is well illustrated by the following authorities: *Incorported Town of Tahlequah v. Guinn,* 5 Ind. T. 497, 82 S. W. 886; *Torrent v. Muskegon,* 47 Mich. 115, 10 N. W. 132, 41 Am. Rep. 715; *Wells v. Atlanta,* 43 Ga. 67. The questions in this case fall squarely within the rule announced by the cases first above cited, and hence the plaintiffs, as taxpayers, had the right to institute and maintain this action to the extent at least that they were directly affected as users of water, or to the extent that they may be indirectly affected as taxpayers. By this is not meant that they may champion the rights of other water users for excessive rates which in no way affect the plaintiffs, nor may they champion the rights of the water company or any other person where none of their private or public rights are directly affected.

Proceeding now to a consideration of the reasons assigned by plaintiffs why the ordinance in question should be held invalid and its enforcement enjoined, we remark: There was no evidence whatever offered that the water rates agreed upon between the city and the company for the use of water for city purposes were either unreasonable or excessive. With respect to the contention that one of the plaintiffs was charged unreasonable and excessive rat~s, the evidence did not sustain

the contention, and the court found against it.  Until the contrary is shown, the presumption will prevail that water rates agreed upon between the city and the company are fair and reasonable.  (*Wagner v. City of Rock Island*, 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519; *Robbins v. Bangor Ry. & El. Co.*, 100 Me. 496, 62 Atl. 141, 1 L. R. A. [N. S.], 963.)  The question of excessive or unreasonable rates is therefore out of the case, and needs no further consideration.

It is urged that the granting of the fifty-year privilege to the company to furnish water for the city constitutes a monopoly, and is against public policy and therefore void.  The defendant company insists that this was not one of the grounds stated in the complaint as a reason why the ordinance should be held void, and that therefore we cannot consider it.  The ordinance was, however pleaded, and made a part of the complaint.  All of its provisions were before the district court for consideration, and are now before this court.  As to whether a particular provision, in comparison with all the other provisions, and in view of the allegations contained in the complaint, is legal or illegal, may therefore present a question of law merely.  This particular question, we think, presents nothing more.  It was therefore merely a matter of argument and not pleading.  We think that the plaintiffs have the right to insist upon all questions of law which affect the legality of the ordinance in so far as they are directly and presently affected in their rights as taxpayers and water users.  Whether they are so affected requires an examination of the question presented, and for that purpose we have concluded to examine into it.  If the ordinance is not void, or if they are not affected, then in either event they must fail.  The question is one of grave importance, and merits most careful consideration.  It is not claimed that the city council did not have the power to enter into a contract with some one for the purpose of supplying the city and its inhabitants with water.  Indeed the statutes of this state expressly confer that power upon municipalities.  Neither is it contended that the statutes prescribe any period of time for which such contracts must be limited.  But it is urged that, under the common law prevail-

ing in this state as elsewhere, such a grant is void upon the ground that it constitutes a monopoly. A number of cases are cited in support of this contention. While in the cases cited, under the facts present in those cases, the courts so held, it seems to us that the facts upon which the claim is based here are readily ditinguishable from those upon which the decisions rest in the cases referred to. In those cases one of two elements was always present—either the city council had exceeded the time limit imposed by the statute, or had in terms attempted to grant an exclusive right. Neither of these elements is present in this case, although it is strenuously insisted that the latter is present, if not in express terms, that it is so by necessary implication. There is nothing in the ordinance whatever which makes the grant exclusive. The terms of the ordinance might be the same, although the same privileges were granted to two or more companies to furnish water to the city and its inhabitants. It is true the city agrees to take water and the company agrees to furnish it for a period of fifty years. But there is nothing contained in the ordinance that any other citizen or corporation may not at any time ask for and obtain the same privilege. It is not even specified how many hydrants the city agrees to pay for. All the specification that we can find is that the charge for fire hydrants shall be $35 each annually. The things for which water shall be furnished free are specifically enumerated, but those which the city pays for are not. It is true that the ordinance provides in the first section that the company is given the right to do all things necessary "for the purpose of furnishing and supplying the said city and its inhabitants with water for all necessary and useful purposes." And in section 4 it is provided: "The rights and privileges herein granted shall continue in force for a term of fifty years and from and after December 1, 1906." The ordinance is somewhat loosely drawn and is not specific in many matters that might well have been made more specific. This condition may, however, be accounted for upon the theory that the waterworks were in existence and had been in operation for many years at the time the ordinance was passed. The matters involved in the con-

tract had been litigated in various suits, and all that was then attempted between the city and the company was to modify in certain respects the old contract and to continue it in force as to all other matters not modified. Moreover, since the original contract was without time limit, a limit was fixed in the ordinance. As we have said, we fail to see in what particular the city granted an exclusive privilege to the company to supply water either to the city or to the inhabitants. Could it be reasonably contended that, if the city passed an ordinance extending the right to any one else to lay pipes in the streets and to supply water, this would be contrary to any of the express terms of the ordinance in question? The law upon the question as to whether a grant by a sovereign or one of its agencies is exclusive or not is well settled. It is elementary that unless such right is expressly made exclusive, it is not to be construed so, except by unavoidable implication arising from the terms used in the grant. As is well expressed sometimes, if it is in doubt, the grant fails. This is well illustrated in the following cases: *Jackson Co. H. P. Ry. v. Interstate Rapid Trans. Co.* (C. C.) 24 Fed. 310; *Syracuse Water Co. v. Syracuse,* 116 N. Y. 167, 22 N. E. 381, 5 L. R. A. 546; *Long Island Water Supply Co. v. Brooklyn,* 166 U. S. 685-696, 17 Sup. Ct. 718, 41 L. Ed. 1165; *Stein v. Bienville Water Supply Co.* (C. C.), 34 Fed 145-148; *Bartholomew v. City of Austin,* 85 Fed. 359-364, 29 C. C. A. 568; *Hamilton Gas Light & Coke Co. v. Hamilton,* 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963.

If we assume, however, that the city agreed to purchase all the water used by it from the company for the full term of fifty years, it must still be conceded that in so doing it contravened no positive statute of this state. Plaintiffs concede that the city had the undoubted right to enter into a contract with the company, if limited in terms to a reasonable length of time. What, in view of the circumstances, is a reasonable time? Can we say as a matter of law that a contract not exclusive in terms to supply water for fifty years to a city in this arid region where the sources of supply are limited, appropriated, and controlled is necessarily unreasonable to the

extent that it is absolutely void? Moreover, in addition to the uncertainty of the contract in this regard, are we required to consider it in a case where the matter affecting its validity is involved only indirectly by a taxpayer who is in no way personally affected one way or another? If, as the court found, the rates to be paid by the city for water are just and reasonable under the contract, and if this be likewise true with regard to the rates the water user is required to pay, what is there of substance that personally affects the taxpayer with regard to the length of time the contract is to continue? True he might complain if the contract were prohibited by a statute. So he might if the city had not the power to make any contract; but where such is not the case, and he has no personal interest that is affected, may he champion the rights of others? In this regard whether the company has or has not an exclusive right to supply the city with water for city purposes is a matter that must be determined when some one seeks to invade that alleged right against one who claims a subsisting right which is claimed to be invaded. It is not a matter of doubt that the company has not an exclusive right to supply water to the inhabitants of Ogden City under the ordinance in question. Any citizen or corporation may apply for a grant from the city to construct and operate waterworks to supply the inhabitants, and, if such a right be granted, there is nothing in the ordinance which in any way prevents any one or all the inhabitants from obtaining their water supply from such citizen or corporation. In this respect there is, and can be, no monopoly by reason of the provisions contained in the present ordinance. If the monopoly exists, therefore, it is limited to city water. If this limitation is void because unreasonable, then the city may disregard it at any time and obtain water from some other source. But whether it is so or not should be determined between parties directly and personally interested in its determination. The plaintiffs have no such personal interest, and hence they cannot, in advance, champion the rights of one who may, at some future time, acquire such interest. (*Moore v. City of Walla Walla* [C. C.], 60 Fed. 961; *Dodge v. City of Council Bluffs*, 57 Iowa 560, 10 N. W. 886; *Grant*

v. *City of Davenport,* 36 Iowa 396; *Bellevue Water Co. v. City of Bellevue,* 3 Hasb. [Idaho] 739, 35 Pac. 693.) From the foregoing authorities, and from the facts as they are made to appear in this case, the plaintiffs do not come within the rule that we have attempted to follow in this case, namely, that they may be heard upon all questions that presently and directly affect them in their rights as taxpayers and water users; but it clearly appears that the claim that the city granted exclusive rights to the company is one that does not directly and presently affect the plaintiffs, and therefore they have no right to contest the ordinance upon that ground even though the right granted were exclusive. (*Wood v. City of Victoria,* 18 Tex. Civ. App. 573, 46 S. W. 284.) But even though this provision of the ordinance were held void this would not necessarily require us to inquire into the effect this would have upon other provisions. In *Flynn v. Little Falls El. & Water Co.,* 74 Minn. 180, 77 N. W. 38, 78 N. W. 106, the Supreme Court of Minnesota held that the fixing of water rates for a period of thirty years was unreasonable and beyond the power of the city. The rates in that case, however, were found to be grossly unreasonable and excessive, and upon other grounds their payment by the city was enjoined in an action instituted by a taxpayer. But even in that case the court declined to pass upon the effect the injunction would have been upon other portions of the contract existing between the city and the water company.

It is further contended that the ordinance is void because the city council surrendered its governmental powers of regulating the water rates both with respect to the city and the inhabitants. This proposition, like the one just discussed, directly affects the powers of the city council. The principles involved, to some extent at least, are therefore applicable to both. In discussing the proposition, therefore, we shall not attempt to avoid all reference to the question just discussed, but shall to some extent blend the two propositions, and cite authorities that illustrate and cover both. That the fixing and regulating of water rates is a governmental function and cannot be surrendered nor suspended by the city council is agreed to by all

concerned in this action. We need spend no time, therefore, on this proposition. The law being established on this point, does it follow that, if the provision with respect to the rates fails this will necessarily invalidate the whole ordinance ? The plaintiff's insist that his must necessarily be the result, while the defendant company contends that it does not invalidate the whole ordinance. If the city council were powerless, either to agree to rates for so long a period of time, or to permit the company, or others, to fix them, because the power to do this is governmental and vested in the city council only, and cannot be delegated by it, it seems to us that the attempt to do this amounted to nothing. By attemping it the city lost nothing and the company gained nothing. The whole matter was left precisely where the law placed it. We are, however, not now dealing with a case where, in the absence of a constitutional provision, the courts hold that the Legislature may authorize a municipality to agree with a public service corporation upon rates to be charged for the services rendered, and may make such rates contractual and binding for the time specified in the legislative act. In such instances it has been held that the governmental right to regulate the rates is suspended during the life of the contract, if within the power conferred by the Legislature. This doctrine is illustrated in many cases. *Omaha Water Company v. City of Omaha,* 147 Fed. 1, 77 C. C. A. 267, and *Detroit v. Detroit Citizens' Street Railway Company,* 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592, are directly in point. The doctrine of suspension, as illustrated by the cases last above cited, does not apply unless the power to suspend is expressly conferred upon municipalities by the Legislature. In this state no such power has been expressly conferred nor has it been done by necessary implication. The power, therefore, does not exist. Municipalities in this state, therefore, cannot enter into binding contracts with regard to the rates for services rendered to the public. The right to regulate and fix rates cannot be surrendered, and the duty to exercise the right whenever the rates are or become excessive, can be enforced at any time. The attempt to suspend the right by an ordinance in no way affected the city, and conferred no

right upon the company. It simply amounts to a stipulation in the contract that the city was legally powerless to consent to, and the company as powerless to exercise, except in conformity to law. This attempt did not invalidate the whole ordinance. This, we think, is well illustrated by the cases hereinafter cited.

The plaintiffs assert that the rates agreed upon and the right to maintain them constituted an essential part of the whole contract; that, if the agreed rates cannot be enforced, then the whole contract falls because there can be no segregation of the consideration under the facts of this case. It would seem that the answer of the company that it concedes that the agreement with regard to the rates is invalid, and that it obtained no rights thereunder, ought to be a sufficient, if not conclusive, answer to this contention. If the company is willing to have the rates regulated as the law provides, namely, by any city council that the electors of Ogden City may choose from time to time, it would seem that the question of water rates involved in this contract is not only settled for the present, but that it is settled for all time and in accordance with law. The courts have frequently held that, as the fixing and regulating of rates is a governmental function which may not be delegated nor surrendered by an agency of the sovereign without express authority, no contractual rights can be granted or obtained with respect thereto. This doctrine is thoroughly discussed and applied in the case of *Rogers' Park Water Co. v. Fergus,* 178 Ill. 578, 579, 53 N. E. 363. It is there held that every person dealing with an agency of the sovereign must take notice of the legal powers with which such agency is invested, and that these powers may not be evaded by contract. It is also held that water companies are quasi public servants, and that contracts to furnish a supply of water is a public duty which must be discharged in accordance with the law which always reserves the right to regulate and enforce reasonable rates for the services rendered, and that this law is a part of such a contract and may not be disregarded. It seems reasonably clear to us that in view of the law the company cannot now maintain an action to recover the rates agreed

upon in this contract, if the city defended upon the ground and established the fact that the rates agreed upon were excessive and unreasonable. Neither could the company refuse to provide water under the contract at fair and reasonable rates for the services. This being so, how can a taxpayer annul a contract which neither of the parties thereto may avoid? A complete answer to a claim by the company for the agreed rates would be the lack of power upon the part of the city to agree to excessive and unreasonable rates; while a complete answer by the company, in case the city refused to pay at all, would be the use of the water by the city for which the law would require it to pay a fair and reasonable rate. In the case of *Illinois Trust & Savings Bank v. Arkansas City,* 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518, Mr. Justice Sanborn, in passing upon a similar question, says:

"If it (the company) does not receive this benefit, the city suffers no loss. The only effect upon the city is that it gets the waterworks for a less price than it agreed to pay for them. No reason occurs to us why, under this state of facts, the gas company or its successors may not waive the receipt of the exclusive right and recover the remainder of the consideration which the city promised to pay it. The grant of this exclusive right was neither immoral nor illegal. It was merely *ultra vires.* We know of no rule of law nor of morals which relieves the recipient of the substantial benefits of a partially executed contract from the obligation to perform or pay that part of the consideration which he can perform or pay, because the performance of an insignificant portion of it is beyond his powers."

In the case quoted from an exclusive right was granted which was held void, but it was nevertheless held that the city could not for that reason avoid all the other parts of the contract. In the case at bar the city is continually receiving the fruits of the contract, and the inhabitants enjoy a like benefit. The waterworks are constructed and in constant use. The time, labor, and money of the company have been expended for the purpose of supplying water to the city and its inhabitants. Is all this to be arrested at the request of a tax payer? And are all the rights of the company to be ignored because of some provisions in the contract which the city was powerless to enter into, and which, if ignored, inure to the

benefit of the city and the taxpayer? We think the follow-
ing cases well illustrate that such is not the law: *Freeport
Water Co. v. Freeport City,* 180 U. S. 587, 21 Sup. Ct. 493,
45 L. Ed. 679; *City of Danville v. Danville Water Co.,* 178
Ill. 299, 53 N. E. 118, 69 Am. St. Rep. 304; *Rogers Park
Water Co. v. Fergus,* 178 Ill. 571, 53 N. E. 363; *Tampa
Waterworks v. Tampa,* 199 U. S. 241, 26 Sup. Ct. 23, 50 L.
Ed. 170; *Illinois Tr. & Svgs. Bank v. Arkansas City,* 76 Fed.
271, 22 C. C. A. 171, 34 L. R. A. 518; *Cedar Rapids Water-
works Co. v. Cedar Rapids,* 118 Iowa 234, 91 N. W. 1081;
*Jackson Co. H. P. R. Co. v. Interstate R. Tr. Co.* (C. C.),
24 Fed. 310; *Moore v. City of Walla Walla* (C. C.), 60 Fed.
961; *Knoxville Water Co. v. Knoxville,* 189 U. S. 438, 23
Sup. Ct. 531, 47 L. Ed. 887. In *State v. St. Paul City Ry.
Co.,* 78 Minn., at page 340, 81 N. W., at page 201, it is said:

"In short, while a municipality cannot impair the obligation of its
contract under the guise of exercising its police power, yet it cannot
surrender or barter away its police powers under the guise of making
a contract."

The principles involved in this case are all thoroughly con-
sidered and discussed in the foregoing cases. While in nearly
all of them some matters incorporated into the contract were
held to be void on the ground that the matters were *ultra
vires,* still, in none of them, was the entire contract held to be
void and nonenforceable. This doctrine is peculiarly applic-
able to cases like the one at bar, where everything pertaining to
the contract has been *executed except the part of continuing*
the services contemplated by it to be rendered for a term of
years. It is true that in the cases of *City of Brenham v. Bren-
ham Water Co.,* 67 Tex. 542, 4 S. W. 143, and
in *Edwards County v. Jennings,* 89 Tex. 618, 35 S. W. 1053,
the Supreme Court of Texas held that provisions in the con-
tract giving exclusive rights to the water company invalidates
the whole contract. This, however, is based upon a constitu-
tional provision in force in the state of Texas, and the cases in
which it was held did not present the peculiar facts present in

this case and present in the cases cited by us in support of our views. It may well be that an attempt to execute a contract before its execution is entered upon or even an attempt to enter into a contract which in part only is illegal or *ultra vires* would, in a proper proceeding, be enjoined as an entirety. In such a case there is no part performance to be considered, and the parties may easily enter into a contract by which all objectionable parts are avoided. To declare a whole contract void, however, simply because some parts of it are *ultra vires* but not expressly prohibited and not contrary to good morals, and where such *ultra vires* parts, if disregarded, inure to the benefit of the party objecting, is quite a different matter.

It is further insisted by the plaintiffs that the ordinance should be held void upon the ground that it provides that the water user shall pay for and maintain water meters if such user desires to pay for water by meter rates rather than the flat rates; and upon the further ground that extensions of the system need be made only when such extensions return a revenue upon the cost of making them amounting to eight per cent.; and also upon the ground that, where no rates are specified in the ordinance for water, the company may establish and collect reasonable rates. These are all matters in which the plaintiffs are not now interested. No user of water is required to obtain a meter. The matter is entirely optional with him. If he demands a meter, and the company provides him with one, he suffers no injury. If, upon the other hand, the company refuses to provide one, if the law requires this of it, we can see no reason why he may not enforce his right in the courts precisely the same as he might do if the company had agreed to provide one, but, notwithstanding such promise, refused to do so. If the provision in this regard is void, then the water user cannot complain. If, upon the other hand it is valid, then again he has sustained no legal injury by its enforcement. At all events it is not a matter in issue now, and, so far as the record discloses, may never become a live issue. With regard to the extensions the same reasons apply. There is not a word of testimony that eight per cent. on the cost of making them will be an unreasonable rate for water service;

nor is there a word of evidence that extensions are contemplated nor that any will be made. Moreover, so far as this record discloses, none of the plaintiffs may ever be affected by them if made. As we understand it, the effect of the provision is that the water users along the line of extension, not the city, must pay the stipulated amount. As taxpayers the plaintiffs are therefore not directly interested, and as users of water they never may be. If, however, the rates should be unreasonable and excessive, the courts are always open to the city' or the taxpayers to prevent their enforcement. On the other hand, the courts are likewise open to the company to prevent the enforcement of confiscatory rates, against it. The rate question is thus left open, and must so remain for adjustment and regulation whenever the occasion calls for it.

With respect to the rates that are left to be fixed by the company, this ground is also covered by what we have already said. The city council certainly had the power to agree upon reasonable rates. This is all the company is authorized to impose by the provision of the ordinance now under consideration. Is it a matter of substance whether the city council proposes the rates or the company does so? The real thing to be kept in mind is that the rates, whatever they are, must be fair and reasonable. To make them so, and to maintain them as such, is the special province of the city council. But how, or through what sources or means, it arrives at such a rate is not material.

A further objection urged is that the city council had no authority to surrender the option to purchase the water system which the city had under the Bothwell contract. But this, it seems to us, is not a judicial question. Whether the city council should have reserved an option to purchase the plant or not in the first instance was a matter purely discretionary with it. There was no legal duty imposed upon it to reserve such an option, and we know of no law whereby the exercise of the right could be enforced. The reservation of the right in the contract, as well as its exercise when made, were therefore matters purely of discretion vested in the city council. If discretionary in this regard, it must likewise be held discretionary

with regard to whether the option should be abandoned or not. Whether it was wise or unwise, prudent or otherwise, to do so, is not a matter for judicial review. The option had been running for over 16 years. The price fixed was the original cost, and before the plant could be purchased, even at this price, the city would have to pay $150,000 for the right to use the conduit, and thereafter pay one-half of the cost necessary to maintain it. It may well be that after such a length of time the use and wear and tear of the original plant no longer made the cost price a fair purchase price. Neither can it be said that the city did not receive ample consideration for surrendering the option. Large claims against the city were relinquished by the company, and the company now pays the city an annual license or occupation tax of $2,500. Even if the question were one for judicial review, we cannot see in what way either the city or the taxpayers are prejudiced by the surrender of the option at the price fixed. Nor can we conjecture in what way the surrender of the option can possibly affect the present ordinance or its enforcement.

The objection urged against the ordinance because the city council requires the board of education of Ogden City to pay for water used upon the lawns surrounding the school buildings from June 1st to September 15th in each year is, we think, likewise untenable. This was a matter that clearly fell within the province of the city council in readjusting the rates to be paid and in agreeing upon the quantity of water to be furnished free to the city by the company. The taxpayer has no better right to obtain water free or for less than what amounts to a reasonable compensation for the service than the company has to enforce excessive rates. There is not a word of evidence concerning the amount of water that will be required for such lawns, whether it will cost $1 or $1,000, nor that the arrangement in respect thereto is unfair or unreasonable. The entire claim is based upon the fact that under the Bothwell contract water for schoolhouse lawns was free, while under the ordinance it is not. For aught that appears from the record the change from the Bothwell contract to the present one may have been fair, just, and equitable in view of all the circumstances.

That it was so, in the absence of evidence to the contrary, we must presume. If this be assumed, as it must be, how can a taxpayer be heard to complain? Indeed, so far as the record discloses, the present arrangement, although it does require payment for one item which was free before, may still redound to the benefit of the taxpayer when the whole contract is considered. Shall one or two taxpayers, therefore, be permitted to destroy a contract that may be for the benefit of many by simply pointing to an isolated matter which, if considered alone, might possibly affect them? We think not. If the rate agreed upon with regard to the lawns is or becomes unreasonable it can, and no doubt will be adjusted. This is all the taxpayer is entitled to. The wisdom of the arrangement is not a matter for judicial review.

The last objection to be considered is one with regard to the so-called leasing to the company of the 0.98 second foot of water owned by the city. This presents a question not entirely free from difficulty. The Constitution (section 6, art 11) provides: "No municipal corporation shall directly, or indirectly, lease, sell, alien or dispose of any waterworks, water rights, or sources of water supply now, or hereafter to be owned or controlled by it; but all such waterworks, water rights and sources of water supply now owned or hereafter to be acquired by any municipal corporation, shall be preserved, maintained and operated by it for supplying its inhabitants with water at reasonable charges: Provided, that nothing herein contained shall be construed to prevent any such municipal corporation from exchanging water rights, or sources of water supply, for other water rights or sources of water supply of equal value, and to be devoted in like manner to the public supply of its inhabitants." Has either the letter or spirit of this provision been invaded by the city in dealing with the water mentioned in the ordinance? It is quite clear that the city legally may exchange the quantity of water mentioned for a like quantity with any person or corporation. If it could effect such an exchange for all time, could it not do so for a limited time? The right to do the latter is necessarily included in the former. Now, what is it that the

city has done in this case? Designating its act in this regard
as one thing, rather than as another, is not controlling. When
it is urged that a statutory or constitutional provision has
been violated, we must look to the act rather than the name
given to the act. In this connection it must not be overlooked
that this court, in the case referred to in 28 Utah 25, 76 Pac.
·1069, has already passed upon and sustained the Bothwell con-
tract. It was there held that the city had the power to deal
with this 0.98 second foot of water in the manner set forth in
the ordinance, and that the real consideration for the contract
was the construction and maintenance of the water system and
the supplying of the city and its inhabitants with water. True
that contract was made before the Constitution went into ef-
fect. It is equally true that the ordinance in effect amounts
to a mere continuance of that contract in so far at least as the
water is concerned. If this be the correct view, then the ques-
tion is hardly an open one. But, assuming it not to be the cor-
rect view, and that the ordinance must be construed as a new
contract, does it violate the constitutional provision above
quoted? It will be observed that so long as the city water is
devoted to the use of the city and its inhabitants this provision
is not infringed. Is this water so applied under the provisions
of the ordinance? It seems to us that it so admits of little if
any doubt. From the statement of facts made at the begin-
ning of this opinion, it appears that a large volume of water is
delivered to the city free. Just what this volume is as com-
pared with the 0.98 second foot owned by the city the record
does not disclose. The present chief justice in the case re-
ferred to in 28 Utah, at page 44, 76 Pac., at page 1074, in dis-
cussing this point, said: "While the record does not disclose
the exact quantity of water furnished to the city free under
the lease, yet it is evident from the numerous public uses made
of the water that the city used, without cost or expense of any
kind on its part, a quantity equal to, or greater than, that leas-
ed to defendants. The payment of the nominal money consid-
eration of $1 provided for in the lease was evidently exacted as
an annual acknowledgment of the city's title on the part of the
lessee, and, as stated, not the real or true consideration. And,

further, the water has not been diverted from the uses to which it was dedicated.    The only change made is that it is being distributed by a private corporation instead of a public corporation."

Can the matter be regarded in a different light now? We think not. Does the constitutional provision above quoted stand in the way? Our answer is again in the negative. Would it not be a most forced and unreasonable construction of the constitutional provision to say that it meant that a city owning a small quantity of water entirely insufficient for its public needs, say nothing of the needs of its inhabitants, could not make any arrangement with any person to permit its water to flow through the pipes owned and controlled by such person and to distribute it for the use of the city? Would it alter the case if such an arrangement were called a lease? Does it not in substance amount to this? The city has some water but no means of distribution.    Some one has the means of distribution and an additional amount of water, which, if combined with what the city owns, the needs of the city and its inhabitants, may be met.    In order, therefore, to make use of the city's water, it enters into an arrangement with the person owning and controlling the waterworks and the additional water to permit its water to flow through the system owned by such person and in order to preserve its title to the water the city requires the distributer to make a proper acknowledgment of this title.    The mere fact that the city cannot say that the identical water owned by it is distributed to it in no way changes the effect of the arrangement.    As we have already pointed out, the city may exchange water for water, and this in effect is all that it has done in this case, and that is all that can in any event be done under the provisions of the ordinance.    If the ordinance had been worded so as to define the rights and purposes of the parties just as we have outlined them above, perhaps no one would have raised an objection. The mere fact that what was in fact intended and what is being accomplished is not precisely stated in apt phrases in the ordinance ought not, in a court of equity at least, affect the result.    We are of the opinion that the arrangement with

respect to the 0.98 second foot of water is not contrary to the provisions of the Constitution, and the ordinance should not, for that reason, be declared void. By what we have said it is not intended that cities may, by indirect acts, circumvent this constitutional provision. But what we mean is that, when it is clear that the facts complained of were not intended as an evasion or have in any manner violated the spirit of the Constitution, then the acts will be upheld, unless such acts are clearly prohibited by the language contained in the Constitution. In other words, the acts must fall within the spirit of the constitutional inhibition, and not merely within the name applied to them. It is well to remember that Constitutions, like other laws, are not to be interpreted alone by their words abstractly considered. The words should be read in the light of the conditions and necessities which they are intended to meet and the objects sought to be attained thereby. (*State v. City Council*, 23 Utah 13, 64 Pac. 460; 1 Dillon's Municipal Corporations [4th Ed.], sec. 3a.)

We are constrained to hold, therefore, that the agreement fixing the rates for the entire period of the contract cannot be upheld; that the city council had the right to agree upon and fix temporary rates; that the rates agreed upon and set forth in the ordinance are presumed to be fair and reasonable until the contrary is shown; that the city council cannot delegate its duty to regulate, fix, and maintain reasonable rates, but that it must exercise this power and duty in that regard whenever the rates are or become excessive and unreasonable; that the city or any tax-payer may have recourse to the courts to enforce reasonable rates and prevent the company from collecting such; that the company may likewise have recourse to the courts to prevent the city council from enforcing confiscatory rates; and that the whole ordinance in question is not vitiated by reason that the city council agreed that the rates with regard to the hydrants should be maintained during the entire period of the time mentioned in the ordinance, nor because the city council agreed that the company or a committee may fix or revise certain rates; nor is the entire ordinance void upon the other grounds urged by the plaintiffs and dis-

cussed in this opinion. Since the present rates are reasonable as found by the court, and there is no present threat to enforce unreasonable rates and nothing for which present relief can be granted to any of the plaintiffs, there is no reason for and no ground upon which the judgment of the court can be reversed or modified.

The judgment, therefore, should be, and it accordingly is, affirmed, with costs to the defendants.

McCARTY, C. J., and STRAUP, J., concur.