[File No. 5878.]

R. W. SIMMONS, Respondent, v. BOARD OF EDUCATION OF THE CITY OF CROSBY, NORTH DAKOTA, Also Known as Holmes School District No. 3, of Divide County, North Dakota, et al., Appellants.

(237 N. W. 700.)

Opinion filed July 15, 1931.

*George P. Homnes,* for appellants.

*E. J. McIlraith,* for respondent.

CHRISTIANSON, Ch. J. · This action was brought by the plaintiff as an elector and taxpayer in the defendant school district to enjoin the defendants from renting the auditorium in the high school building for use for theatrical entertainments. The district court rendered judgment that the defendants be enjoined and restrained from renting said high school auditorium to any "traveling troupes, persons, corporations and others who make a business of putting on commercial entertainments for profit;" but that the decree so entered "shall apply only to professional entertainers and shall not be considered as restraining any one connected with the defendant school or its classes, Chautauquas, local entertainments, athletic contests, or those who are not professional entertainers." The defendants have appealed and demand a trial anew in this court.

In his brief on this appeal plaintiff says:

"The question presented to this court is—Can the school board lawfully rent its school auditorium, built and maintained by tax money, for commercial purposes, viz., renting it to professional vaudeville troupes, at $40.00 per evening, and at which a charge is made?"

The material and undisputed facts are substantially as follows: The plaintiff is a freeholder, elector and taxpayer in the defendant school district. He is also a stockholder in, and the manager of, the Auditorium Theatre Company, a corporation engaged in the business of operating a theatre in the city of Crosby. In this theatre various forms of entertainment are put on, such as motion pictures and vaudeville acts. It is also rented to concert companies, road shows and traveling troupes for presentation of their performances.

The defendant school district is a special school district, including within its boundaries the city of Crosby and certain rural territory ad-

jacent thereto. The school buildings in question are situated within the city of Crosby, where the defendant school district maintains and operates a high school. The building which is utilized for high school purposes contains a large room used both as an auditorium and a gymnasium. It has a large stage and stage equipment. The chairs are removable so as to enable it to be used as a gymnasium as well as an auditorium. When used as an auditorium it has a seating capacity of about nine hundred. The auditorium is in charge of the superintendent of the schools of the defendant district who is permitted, under certain rules and regulations adopted by the board of education, to allow the auditorium to be used for other than strictly school purposes. The rules adopted by the board of education for the guidance of the superintendent are as follows:

"The assembly halls of the schools are for school uses and may be rented for other purposes only when no interferences with school work or student activities arise therefrom. For the use of the auditorium or study hall per evening for educational purposes with admission free, there will be a charge of $10.00; for all other purposes where admission is not free, or which otherwise yield a revenue, not less than $40.00 will be charged.

The rate is based on the auditorium arrangements being undisturbed.

Application for use of school room must be presented to superintendent of city schools on printed form provided by the board of education and must in all cases be accompanied by the amount of rental fee fixed by the board, which amount will be returned in case the application is not granted. The application shall be deemed granted when signed by the superintendent or president of the board of education. The granting of application for the use of the auditorium confers no privileges with reference to any other part of the building unless under special agreement.

Smoking in any part of the school building is prohibited."

The superintendent testified, and it is not disputed, that the auditorium is not permitted to be used for dancing. The evidence shows that from time to time the superintendent has rented the auditorium, under the regulations provided by the board of education, for various entertainments at which an admission was charged as well as for entertainments at which no admission was charged; and that for such respective

uses he received and paid into the treasury of the defendant school district the rental charges specified in the rules.

There is no showing that the auditorium has at any time been rented, or that there is any intention to rent it in the future, so as to interfere with its proper use for school purposes. On the contrary, the evidence in the case clearly indicates that it never has been so rented. Nor is there any claim that the entertainments which have been put on, or are likely to be put on, in the auditorium were or are in any sense improper or unfit to be shown there. In fact, the chief complaint of the plaintiff, both as gathered from the allegations of the complaint and from his testimony, is that the high school auditorium competes with the business of the theatre operated by him and that on one or more occasions certain parties putting on entertainments preferred to and did rent the high school auditorium instead of the building operated by him. There is not the slightest showing that any injury has been occasioned, or that any injury is likely to be occasioned, to the property of the school district; there is nothing to show that there has been any diversion or misuse of the school district funds. The inevitable conclusion to be drawn from all the evidence is that the school district and the taxpayers thereof as such have distinctly benefited by the renting of the auditorium, as the rent received and turned into the treasury considerably exceeded all the expenses incident to such use so far as the school district is concerned and left a substantial net profit in the school treasury.

Under the laws of this state there exist four different forms of school districts: (1) Common school districts (Comp. Laws 1913, §§ 1140 et seq.); (2) special school districts (Comp. Laws 1913, §§ 1229 et seq.); (3) independent school districts (Comp. Laws 1913, §§ 1286 et seq.); and (4) cities organized for school purposes under special laws enacted by the territorial legislature. Comp. Laws 1913, § 1286. See also Anderson v. Fargo, 48 N. D. 722, 725, 186 N. W. 378.

A city, or an incorporated or platted town or village, may be constituted a special school district, alone or with contiguous territory. (Comp. Laws 1913, §§ 1229, 1230.) Such school district becomes a body corporate for school purposes and has a board of education as its governing body. Comp. Laws 1913, §§ 1241 et seq. The board of education is vested with custody of all school property of every kind.

Comp. Laws 1913, § 1251. At the time this case was decided by the district court the laws did not grant specific power to the officers of a school district either common, special or independent, to rent the school house for any purpose. They provided, however, that the school board of a common school district "may permit a school house, when not occupied for school purposes, to be used under careful restrictions for any proper purpose, giving equal rights and privileges to all religious denominations or political parties, but for any such use or privilege it shall not be at any cost for fuel or otherwise to the district. Nor shall any furniture which is fastened to the floor be removed, and whoever removes any school furniture for any other purpose than repairing the same or for repairing the school room, shall be guilty of a misdemeanor and shall be fined not less than five nor more than ten dollars for each offense." Comp. Laws 1913, § 1183.

This statute relates to common school districts only. There is nothing in the history of the legislation to indicate why special and independent school districts were not included. The board of education of special and independent school districts are vested with larger powers as regards the schools under their control than are the school boards of a common school district and it is not unlikely that the lawmakers, in enacting the statute, assumed that the boards of education of special and independent school districts already possessed the powers therein granted to the board of a common school district.

After the trial court had made its determination in this case the legislature set at rest all doubt as to the power of a board of education of a special school district to rent an auditorium for entertainment purposes, in the circumstances shown here, by enacting the following statute:

"School boards and boards of education having charge of any school buildings may permit the use thereof, when not occupied for school purposes, under careful restrictions, for any proper purpose, giving equal rights and privilege to all religious denominations and political parties, provided that such use shall not be at any cost to the district, and provided that furniture fastened to the building shall not be removed or unfastened. Public school or high school auditoriums and gymnasiums may be let for individual meetings, entertainments, or conventions of any kind, subject to such restrictions as the governing board of such

districts shall prescribe, provided that such letting shall not interfere with the operation of the school or with school activities, and provided that a charge shall be made for such use, at least sufficient to cover any cost to the district for light, heat, janitor service, or other incidental expense connected therewith." Laws 1931, chap. 125, § 1.

The legislature also indicated that it was not certain but that the power so granted already existed, but that the statute was enacted to remove any doubt as to the existence of such power. Laws 1931, chap. 251, § 2.

The plaintiff has cited many authorities bearing upon the questions of the use of school buildings for other than school purposes and the right of a taxpayer to enjoin such use, but none of the cases cited present a situation like the one involved here. In the cases cited there was either an attempt to devote the moneys or property of a municipality in a private enterprise or the use permitted interfered directly or indirectly with the use of the property for the municipal or governmental purpose for which it had been acquired. In this case no such situation exists.

This is not the case of a municipal corporotion diverting property from its intended governmental use and engaging in business in competition with its taxpayers. It is a case where the officers of a school district permit public property to be devoted to a temporary, casual and incidental use in circumstances where the taxpayers of the district are not injured but rather benefited. There is no claim that the gymnasium has been rented for any length of time,—the arrangement for use for entertainment purposes has been restricted in each case to a particular entertainment. Under the showing made here there is not the slightest basis for a claim that the use of the property under the rules adopted by the board of education for entertainments in any manner interferes with any possible use of the property for school purposes. There is nothing to show any injury either to the auditorium itself or to any property connected with the operation of the schools,—either that belonging to the school district or to the pupils therein. In the circumstances the plaintiff did not show himself entitled to injunctive relief. Dewey Hotel Co. v. United States Electric Lighting Co. 17 App. D. C. 356; Blanton v. Merry, 116 Ga. 288, 42 S. E. 211; Morris v. Municipal Gas Co. 121 La. 1016, 46 So. 1001; Stone v. Oconomowoc, 71 Wis. 155, 36 N. W. 829; Cole v. Atlantic City, 69 N. J. L. 131,

54 Atl. 226; 32 C. J. p. 295. See also Parody v. School Dist. 15 Neb. 514, 19 N. W. 633; Gilfillan v. Grier, 145 Pa. 317, 22 Atl. 593; Brummitt v. Ogden Waterworks Co. 33 Utah, 285, 93 Pac. 828; Collins v. Keokuk, 147 Iowa, 605, 125 N. W. 231; Bell v. Platteville, 71 Wis. 139, 36 N. W. 831; Amusement Syndicate Co. v. Topeka, 68 Kan. 801, 74 Pac. 606; Anderson v. Montevideo, 137 Minn. 179, 162 N. W. 1073.

The right of action in a taxpayer's suit is predicated on the theory that the money or property of the municipal corporation belongs to the taxpayers thereof and that they will be compelled to pay debts created by the corporation; that consequently an illegal disposition of moneys or property, or the illegal creation of a debt, will result in an increased burden of taxation affecting all the taxpayers; and that, hence, any taxpayer may maintain an action in his own behalf and in behalf of other taxpayers to restrain the illegal act. The right of action on the part of a taxpayer is founded upon equitable principles, and exists only where the facts shown bring it within some recognized head of equity jurisdiction. 5 McQuillin, Mun. Corp. p. 5315. Two elements are always essential to the existence of a right of action in what is known as a taxpayer's suit, namely: (1) A wrongful act of the municipality, and (2) injury resulting to the complaining taxpayer, as a taxpayer. These two must co-exist. 5 McQuillin, Mun. Corp. p. 5346. A taxpayer's suit does not lie merely to enable a taxpayer to supervise or control the acts of public officers for the taxpayer's own personal advantage even though the acts complained of may be in excess of their authority. In addition to excess or want of authority it must further appear that the threatened act is likely to result in injury to taxpayers and that proper grounds for equitable interference exist. A person who institutes a taxpayer's suit must show that he is entitled to relief in that capacity. In this case no injury to taxpayers has been shown. On the contrary, according to the undisputed evidence, the taxpayers of the defendant school district have been benefited, and will be benefited, by the acts complained of. In these circumstances plaintiff was not entitled to injunctive relief. Dewey Hotel Co. v. United States Electric Lighting Co. 17 App. D. C. 356, supra; Blanton v. Merry, 116 Ga. 288, 42 S. E. 210, supra; Morris v. Municipal Gas Co. 121 La. 1016, 46 So. 1001, supra; Stone v. Oconomowoc, 71 Wis. 155, 36 N. W. 829, supra; Cole v. Atlantic City, 69 N. J. L. 131, 54 Atl. 226, supra; 32 C. J. p.

295; Merritt v. Duluth, 103 Minn. 236, 114 N. W. 758; Andrews v. South Haven, 187 Mich. 294, L.R.A.1916A, 908, 153 N. W. 827, Ann. Cas. 1918B, 100. See also Parody v. School Dist. 15 Neb. 514, 19 N. W. 633; Gilfillan v. Grier, 145 Pa. 317, 22 Atl. 593; Brummitt v. Ogden Waterworks Co. 33 Utah, 285, 93 Pac. 828; Collins v. Keokuk, 147 Iowa, 605, 125 N. W. 231; Bell v. Platville, 71 Wis. 139, 36 N. W. 831; Amusement Syndicate Co. v. Topeka, 68 Kan. 801, 74 Pac. 606, and Anderson v. Montevideo, 137 Minn. 179, 162 N. W. 1073, supra.

There is another reason why the judgment appealed from must be set aside. Under the provisions of chapter 251, Laws 1931 (quoted above), the defendant school district has unquestioned power to rent the high school auditorium for the purposes, and in the circumstances, shown by the evidence in this case. The permanent injunction rendered in this case contravenes the provisions of the statute. While, of course, the statute did not affect the rights of the parties at the time the judgment was entered, it does affect the right of the plaintiff to a permanent injunction at this time and requires that such injunction be set aside. For "an injunction will be dissolved where, subsequent to its issuance, a statute which legalizes the acts restrained is enacted." 32 C. J. p. 407.

The judgment appealed from is set aside, and the cause is remanded to the district court with directions to dismiss the action.

BURKE, BIRDZELL, NUESSLE, and BURR, JJ., concur.